OLIVE, STERNENBERG & CO. v. SABINE & EAST TEXAS RAILWAY CO.

No. 916.

**1.   Right of Way of Railway Company—Description in Deed.**

Where a railroad has been located across a survey of land and is in existence, a deed of the "right of way" across the survey conveys a strip of land 200 feet wide along the line of the railroad, and is sufficiently definite in description.

**2.   Same—Extent of Right Conveyed.**

A deed of a right of way 200 feet wide across a given survey of land conveys to the railroad company the privilege of putting all parts of the strip so conveyed to all the uses for which the right of way may be employed.

**3.   Same—Specification of Rights and Uses.**

The uses to which the company may put its right of way include the building of side tracks, buildings, telegraph lines, and other structures necessary for its business, the making of cuts and embankments, taking material for its necessary building purposes, the enclosure of the track with fences, and the keeping of its premises in proper and safe condition for the prosecution of its business.

**4.   Same—Rights of Owner in Fee.**

But while the paramount right is in the railway company, the owner of the fee in the land used for right of way may put it to any uses not inconsistent with the exercise by the company of its rights and the discharge of its duties.

**5.   Same—Erection of Buildings on Right of Way.**

The erection on a right of way by the owner in fee of the land, of buildings, and other permanent structures, is inconsistent with the right of the railway company, and the company is entitled to have such structures removed, without showing any specific use to which it expects to put the ground.

**6.   Same—Improvements in Good Faith.**

In an action by a railway company to compel the removal of buildings from its right of way, the defendants are not entitled to recover the value of the improvements as possessors in good faith under the statutes regulating actions of trespass to try title.

**7.   Same—Rights of Lessee.**

Where a lessor during the lease conveyed a right of way across the land to a railway company, and the lessee erected buildings on the right of way, and afterwards, before the expiration of the lease, purchased the land, the right of the company, after the expiration of the lease, was superior to that of the lessee, and such as entitled it to have the buildings removed from the right of way.

APPEAL from Hardin.   Tried below before Hon. L. B. HIGHTOWER.

*P. A. Work* and *Hume & Kleberg,* for appellants.—1.   The owner of the fee to the land of an easement which is a railroad company's right of way, retains his exclusive right in and to such land for every purpose of use or profit not inconsistent with the public easement, and is entitled to its dominion and control, possession or enjoyment, so long as the owner of such easement does not actually appropriate its whole width to the uses for which it was acquired, and so long as there remains to the owner of such easement the free and unobstructed use and enjoyment of a sufficiency thereof to enable it to discharge its public duties and accomplish the objects of its incorporation and purposes of its creation. Nor can such owner of the fee be altogether excluded from the limits of such easement until the owner thereof alleges and shows by competent evidence that an actual necessity for the use of its whole width for specific railroad purposes exists.   Muhle v. Railway, 25 S. W. Rep.,

607; Lyon v. McDonald, 14 id., 261; Cal. L. Co. v. Harris, 13 id., 453; Odneal v. City of Sherman, 14 id., 31; Railway Co. v. Telford, 14 id., 776; Railway v. Allen, 31 Am. Rep., 190 (22 Kan., 285); Railway v. Kip, 7 Am. Rep., 385 (46 N. Y., 546); Lewis on Em. Dom., sec. 586; Atkins v. Bordman, 37 Am. Dec.; Phipps v. Johnson, 99 Mass., 26; Cooley's Const. Lim., 691, 692.

2. The description in said deed of said right of way is so vague, indefinite and uncertain as to render the identification of the true situation and boundaries of said easement impossible, and is therefore void. Jones v. Andrews, 62 Texas, 652; Parker v. Railway, 84 Texas, 333; Railway v. Durrett, 57 Texas, 48; Railway v. Mud Creek, etc., Co., 1 App. C. C., sec. 393; Railway v. Hoggset, 1 App. C. C., sec. 444; Sayles' Texas Civ. Stat., art. 548, note (5).

*Baker, Botts, Baker & Lovett,* and *Votaw & Chester,* for appellees.

1. A railway company having acquired a right of way by deed is entitled to exclusive control and possession of same, as against all persons seeking to appropriate it or any part thereof to their own personal use and benefit.   Sayles' Civ. Statutes, arts. 4211, 4212, 4169, 4178, 4207, 4167, 4180, 4216, 4170a, sec. 1, 4245.   Railway v. Burt, 27 S. W. Rep., 948; Railway v. Polk, 28 S. W. Rep., 353; Railway v. Cusenberry, 26 S. W. Rep., 46; Jackson v. Railway, 60 Am. Dec., 246; Railway v. Potter, 1 Am. Rep., 325; Fluker v. Railway, 12 Am. St. Rep., 328; Jones v. Railway, 23 Atl. Rep., 251; Railway v. Jones, 44 Am. Rep., 334; Brainard v. Clapp, 57 Am. Dec., 74; Railway v. Tripp, 9 Am. Rep., 661; Railway v. Strickland, 12 Am. St. Rep., 282; Landrigan v. State, 25 Am. Rep., 547.

2. A grant by the owner of a strip of land of certain width, across a particular tract owned by the grantor, would confer right of election upon the grantee and authorize him to locate the same upon any part of the tract he saw fit; upon the principle that a conveyance must be held to pass some interest when the conveyance is not involuntarily made, and such deed will be most strongly construed against the grantor. Wofford v. McKinna, 23 Texas, 46; Wooters v. Arledge, 54 Texas, 397; Coke v. Roberts, 71 Texas, 602; Limartz v. McCullock, 27 S. W. Rep., 279; Dohoney v. Womack, 19 S. W. Rep., 883; Dohoney v. Womack, 20 S. W. Rep., 950; Devlin on Deeds, sec. 1019.

WILLIAMS, ASSOCIATE JUSTICE.—This suit, as originally instituted, was in form an action of trespass to try title, by appellee, to recover of appellants its right of way across the James Pearson tract of land, in which it was alleged that appellants had entered upon such right of way and ousted plaintiff therefrom.   Appellants in their answer claimed, in substance, that they were the owners of the fee simple title to the Pearson tract and were making only such use of the land included within appellee's right of way as they were entitled to make as such owners. They set out in detail the facts showing the character of their use of

the land and the structures and improvements which they had made upon it. The latter are more fully stated below. Appellee thereupon filed additional pleadings, contesting the right of appellants to maintain upon its right of way the structures and improvements described in the answer, and claiming that such use of the land by the owner of the fee was inconsistent with its enjoyment of its right of way over the land, and asked for judgment requiring appellants to remove such structures. Appellants, by their pleadings, asked for compensation for the value of the improvements in case they were required to remove them, alleging that they had been made in good faith. The facts, upon which the decision turns, are sufficiently stated in the pleadings, and shown by the evidence, and, as stated by counsel for appellants, are as follows:

"1.   In 1881 appellee entered upon the James Pearson 160 acre tract of land in Hardin County, Texas, and constructed its roadbed and railway track thereon and across the same, and has ever since that time continuously and openly used and operated the same.

"2.   Thereafter, on November 3, 1881, Olive & Sternenberg leased for a period of ten years, from the then owner in fee, the East Texas Land Company, the said James Pearson survey. The lease provided that the lessees might locate, build and maintain a saw mill and other buildings necessary for the transaction of a lumber-milling business on said tract of land. Said lessees went into immediate possession of said land under said lease, erecting improvements thereon, and they and their successors have remained in possession of said tract of land ever since said time.

"3.   On the 29th day of March, 1884, appellee obtained from the East Texas Land Company a deed, conveying to it, for the purpose of constructing, operating and maintaining its railroad, the right of way 200 feet in width over and upon, among other surveys, said James Pearson survey.

"4.   On the 22d day of September, 1887, before the expiration of their said lease, Olive & Sternenberg purchased by warranty deed the fee of said Pearson survey from the East Texas Land and Improvement Company, the immediate vendee of the East Texas Land Company, of which last-named company they had theretofore, November 3, 1881, leased said land; said deed conveying all of the James Pearson tract of land to Olive & Sternenberg, saving and excepting the right of way conveyed to appellee by said deed of March 29, 1884.

"5.   December 7, 1889, appellants, Olive, Sternenberg & Co., succeeded Olive & Sternenberg in the ownership and possession of all the land, buildings and improvements, and rights and privileges in controversy in this suit.

"6.   From November 3, 1881, until the 22d day of September, 1887, Olive & Sternenberg erected on said Pearson survey, within 100 feet of the center of each side of plaintiff's roadbed and railway track, the following buildings and structures: One grain house, part of a planing mill building 200 feet in length, a mill business office, with cistern and shed therefor, a storehouse, a retail liquor house, one drugstore and physi-

cian's office combined, one-half dwelling house, a half each of three other dwelling houses, one-fourth of another dwelling house and a portion of a fifth dwelling house, i. e., a portion of said last-named structures being within the said 100 feet and the balance thereof being outside thereof. After said 22d day of September, 1887, up to the 7th day of December, 1889, Olive & Sternenberg placed the following structures and planted the following trees and vines within said 100 feet: One residence, the front gallery and corner of a second residence, an elevated water tank and pipes and hydrants connected therewith, barber shop, feed house, six peach trees, six apple trees, thirty plum trees, forty-seven fig trees, 158 pear trees and 530 grape vines. After said date and up to the time of the institution of this suit, appellants, Olive, Sternenberg & Co., owned, besides the property hereinbefore described, situated within 100 feet on each side of the center of appellee's railroad track, the following property: A switch, or a sidetrack, extending from plaintiff's said track to, along and parallel with the grain warehouse and sawmill of appellants', a switch, or a sidetrack, extending from plaintiff's said railroad track to, along and parallel with the planing mill and dry kiln belonging to appellants, a road laid with crossties and iron rails and known as the dolly-way, a logging railroad, which—as also said dolly-way—was constructed and run at right angles with plaintiff's railroad track and across the same, and extending on each side for more than 100 feet from the center of plaintiff's railroad track.

"7. During the trial of the cause appellee limited its action to a prayer for a decree requiring appellants to immediately remove from the limit of its alleged right of way the following structures: One grain house, part of planing mill, a mill business office, with cistern and shed therefor, a storehouse and retail liquor house, one drugstore and physician's office combined, and also portions of the following structures: One-half of three dwelling houses, one-half of another dwelling house, a portion of another dwelling house, the front gallery and the corner of a residence, also one other dwelling house, a residence, a house used as a barber shop, and a feed house used for the storing of forage. Appellee's prayer for the removal of the other structures hereinbefore described, and of the trees and fences, was by it finally withdrawn.

"8. Appellee's railroad has been operating with the aforesaid structures and trees upon its right of way for some twelve years. No specific or needful public use by appellee of the ground occupied by appellants' improvements was shown. Appellee's trainmaster testified that in his opinion the trees, fences and structures of appellants tended to increase the dangers of fire by sparks from the engines, and liability of killing stock at said place, but admitted, upon cross-examination, that so far as he knew, there never had been a fire at said place, and that he did not know that any stock was ever killed there.

"9. Appellants' structures have not interfered with the expeditious handling of appellee's freight and passenger traffic, and it has in no way been inconvenienced by the presence of said structures upon its right of

way, except as may appear from the evidence above stated. Testimony showing that the buildings and structures had been placed on said alleged right of way with the consent and acquiescence of the appellee, as well as testimony offered by the appellants to show the value of said improvements, was, upon objection of appellee, excluded, as appears from the bills of exception in the record."

The case was tried before a jury and verdict was returned for plaintiff, on which the court gave judgment for plaintiff for the recovery of the right of way, as described, and requiring defendants to remove therefrom the structures mentioned in paragraph 7 of the above statement, and for costs.

The leading contention of appellants is that neither the pleadings nor evidence stated a case in which appellee, as the owner of the easement of a right of way, had a right to the relief sought against them as the owners of the fee. We find it unnecessary to discuss separately the pleadings and the evidence. The facts upon which we base our decision appear from both, all of the alleged facts being proven, and vice versa, so far as they are considered essential to a decision. It is claimed that the deed to the right of way was void because of the indefiniteness of the description. The road, at the date of the deed, had been located across the Pearson survey, and was a thing in existence. The conveyance of the "right of way" evidently had reference to the road, as it existed, and conveyed the right to occupy a strip of land 200 feet wide along its line. But, had the situation been otherwise, the deed was sufficient and would have authorized the railway company to cross the land with its road, selecting its own route. The easement conveyed is the right of way 200 feet wide across the James Pearson survey, and it is contended that this entitled the company to occupy and use for its purposes, not necessarily all of the strip 200 feet wide, but only so much thereof as was essential to the purposes for which the right was obtained, i. e., a convenient passage across the land and a proper performance of its duties by the company. But the conveyance is of a right of way 200 feet wide over a larger tract, and not simply a right of way over a strip of land 200 feet wide. The grant defines the extent of the right of way, and the court cannot restrict it to narrower limits, though it should be of the opinion that so much was not needed for the purposes intended. The right of the railway company, such as it is, as between it and its grantor, is the same over every part of the land designated in the grant, and it is so because the parties by the deed have made it so. The case differs from those on which counsel for appellants rely. Johnson v. Kinnicutt, 2 Cush., 153; Graftin v. Moir, 1 N. Y. Supp., 4; s. c., 130, N. Y., 465. In both of those cases the easement granted was a right of way of an undefined width over a strip of land, and not a right of way of a specified width over a larger tract, and both decisions were made to turn upon the descriptive language of the grant. In the former case, Chief Justice Shaw said: "This question must depend upon a just construction of the terms of the grant. The grantors owned both estates in fee, and

they could grant a more or less restricted right, by way of covenant, as they should think proper." In the latter case, the Court of Appeals said: "When the right of way is not bounded in the grant, the law bounds it by the line of reasonable enjoyment." Hence, the conveyance of the right of way, as between the grantor and the grantee in the deed here in question, conferred upon the railway company the privilege of putting any and all parts of the strip 200 feet wide to all uses for which a right of way may be employed, under the law of this State, in the construction, maintenance and operation of a railway. But the title to the fee remained in the grantor, and his right to enjoy the property was impaired only to the extent necessary to the full exercise by the grantee of the rights acquired by it under the conveyance. And here a conflict of opinion has arisen among the courts as to the correlative rights of the owner of the fee and the owner of the right, some holding, as matter of law, that the nature of the use of the right of way, essential in the operation of a railway, is such as to necessitate the entire possession and control of the soil burdened with the right, and to exclude the owner of the fee from any concurrent use or enjoyment of it whatever; and others holding that, while the right of the company is the paramount one, and the owner cannot impede its full exercise or put the land to uses inconsistent with its full exercise, still it is not of such a nature as to prevent the use of the land by the owner for any purpose at all; in other words, that some uses by the owner are consistent with the full exercise by the railway company of all its rights and the accomplishment of all of its ends. The latter view is the one generally held and has been expressed in a number of opinions in this State. Calcasieu Lumber Co. v. Harris, 77 Texas, 22; Lyon v. McDonald, 78 Texas, 71; Muhle v. New York, Texas & Mexican Railway, 86 Texas, 459.

Counsel for appellee urge that the cases referred to have not definitely settled the question in this State, and insist that the law is correctly laid down in the line of decisions first mentioned. But, if the question is to be viewed as an open one, it seems to us that those decisions are incorrect, because they are based upon an incorrect assumption of a fact. Common observation teaches that the owner of the fee may use the land for some purposes without interfering with the operation of the road, and without hindering the company in the exercise of any right. The right to fence the right of way, given by statute, and the duty to keep it free from nuisances, combustible material and the like, as declared by the courts, may not conflict with the use of the land by the owner for some purposes. The track may not be fenced at any place, and cannot be fenced at all places. Combustible material and noxious matter may be kept off the right of way, and still the owner need not necessarily be excluded from all use of it at all times and places. And a particular use of the land by the owner may not obstruct or hinder the exercise of any right or the performance of any duty. But if, in any instance, the right to use the land, claimed by the owner, is, in fact, irreconcilable with the right vested in the railway company, the latter must prevail. So the

question is whether or not the use made of the right cf way by the owner of the fee, in this case, is such as is inconsistent with the rights of the railway company. As we have seen, the company's rights extend to every part of the strip described in the deed. It has the right at all times and places to have such access to and use of the land as is necessary to enable it to perform any duty or accomplish any end which the law requires or permits it to perform or accomplish upon the right of way. The uses to which it may put its right of way include the building of sidetracks, buildings, telegraph lines and other structures necessary for its business, the making of cuts and embankments, taking material for its necessary building purposes, the inclosure of its track with fences and the keeping of its premises in proper and safe condition for the prosecution of its business and the protection of others from injuries to result from any of its omissions. Hence, a possession taken or use made by the owner of the fee of a portion of the land over which these rights extend, which, necessarily, during its continuance, excludes the owner of the right of way from any use of or access to the portion so held or used, would be an invasion of the right of the latter. It cannot be held that an exclusive possession of a portion of the land charged with the easement by the owner of the fee is consistent with the rights of the person entitled to the easement to put the land to such uses as those mentioned. From the pleadings and evidence it appears that appellants occupy parts of the right of way of appellee with buildings which necessarily exclude appellee from any use whatever of the ground on which they stand, and it is only structures of this character that are, by the judgment, required to be removed. It is no answer to say that appellee has shown no specific use to which it expects to put the ground. The uses to which it is entitled to devote it are those of a right of way. Those uses require that it should at all times have access to every part of the ground, and, while they may be consistent with some use of the land by the owner of the fee, they are not consistent with such uses as those made in this case. The right asserted by appellants is necessarily irreconcilable with the right of the appellee. The opinion in the case of Muhle v. Railway, supra, does not conflict with this view. There the land was condemned for the purposes of a depot, but the company had never taken any steps to appropriate it to such uses, and was not, when the issue arose, using its easement. Here the road was built upon the land, and the company was in the full exercise of its right to the easement, and was hence entitled to have the land kept free from any such permanent structures as those maintained by defendants, for the simple reason that by their mere presence upon the land they excluded the railway company from the exercise of any right to or control over the ground on which it stood.

By its pleadings, and in the course of the trial, defendants sought to recover the value of their improvements as possessors in good faith, under the provisions of the statute regulating actions of trespass to try title. Those provisions apply in cases where the plaintiff recovers the possession of land and takes with it the permanent improvements which have been put

upon it and become part of it.   The ground on which compensation for
such improvements is allowed is the fact that the estate recovered by the
plaintiff has been improved and enhanced in value by the possessor, act-
ing in good faith, which renders it just that the plaintiff, in taking the
benefit of the addition to his property, should make fair compensation.
The provisions relied on do not apply here.   The very reason why plain-
tiff recovers, if it does recover, is that the presence of the structures, in-
stead of being a benefit to, is inconsistent with, the right of way priv-
ilege, and is an unjustifiable interference with its exercise.   The relief to
which it is entitled, if any at all, is not to recover the land absolutely,
taking with it all permanent fixtures upon it, but to enforce its right of
way privilege and have the land, encumbered with it, freed from the
presence of those things which impair the right.   Hence there was no
error in rejecting evidence offered to establish the claim for improvements
made in good faith under the statute.   It is claimed, however, by assign-
ment of error and in argument, that appellants had property rights in
the improvements made under its lease superior to the right of way
acquired by appellee under its deed, and that by the judgment the struc-
tures erected under the lease are taken or damaged without compensa-
tion.   If this were true, the judgment would be wrong.   We assume, for
the purposes of the decision, that this question is not affected by the entry
upon the land by the railway company prior to the execution of the lease
under which appellants claim.   That lease being in existence when the
deed for the right of way was executed, appellee took the right of way
subject to all rights vested in the lessees by their lease.   It could not have
condemned the property without compensating them for that portion
of its whole value which their property rights under the lease repre-
sented; and, in the property for the value of which compensation would
have been required, the permanent improvements upon the land would
have been included.   In re Appointment of Park Comrs., 1 N. Y. Supp.,
763.   This would have been their right to compensation had proceedings
been instituted to condemn the land while the fee was still in the original
owner and the term in the lessees.   The owner of the fee would have been
entitled to the remainder of the estate, after deducting the value of the
term and of the fixtures upon the land.   But such would not have been
the status of their rights after the termination of the lease.   Schreiber v.
Railway, 115 Ill., 340.   The land, with all of its improvements,
would then have belonged to the owner of the fee, unless the lessees had
and exercised the right to remove the buildings put there by themselves.
The lessees would no longer have had an interest in the land, but com-
pensation for its entire value, if taken, would have been made to the
owner.   That owner, having previously conveyed the right of way, so far
as he could do so, no condemnation would have been necessary.   The prior
rights conferred by the lease having been enjoyed in full and satisfied,
they would no longer have affected the operation of the conveyance of
the right of way.   The maker of that deed was bound by its terms, and
could not have disputed its operation.   The lessees could have urged no

objection, because their prior rights would have been at an end. Does the fact that the owner of the fee conveyed it to the lessees before the expiration of their term alter the result? We think not. The lessees; after that conveyance, could claim no more than the sum of the rights held at the time of its execution by the owner of the fee and themselves. The latter are satisfied by the full enjoyment of the term. If they had the right, at the expiration of the term, to remove the buildings, it is not denied by the judgment. The rights of the owner of the fee were subordinate to the right of way, which he had conveyed to the railway, and his vendee took the title subject to that right. The title to the easement was conveyed subject alone to the rights of the owners of the term. Those rights having been enjoyed and expired before the suit was brought, nothing remained for which compensation was required.

From what has been said, it is apparent that the rulings made during the trial, of which complaint is made, are immaterial and could not properly have affected the result.

<em>Affirmed.</em>