SHELTON et al. v. CITY OF ABILENE et al.

No. 1435.

Court of Civil Appeals of Texas. Eastland.

Feb. 1, 1935.

Rehearing Denied March 1, 1935.

See, also (Tex. Civ. App.) 75 S.W.(2d) 934.

Davidson, Doss & McMahon, of Abilene, for appellants.

Wagstaff, Harwell, Wagstaff & Douthit and Wiley L. Caffey, all of Abilene, and Curtis E. Hill, John L. Green, T. S. Christopher, and James V. Allred, all of Austin, for appellees.

FUNDERBURK, Justice.

S. M. Shelton and others (about 41 in number) brought this suit against the city of Abilene, the Texas & Pacific Railway Company, and the members and chief engineer of the Highway Commission of Texas, to permanently enjoin the defendants from constructing an underpass across a certain described strip of land, as to which it was alleged "that defendant Texas & Pacific Railway Company is the owner in fee simple." The land was alleged to be in the possession of said railway company, and to have been used for a great number of years exclusively for operation of its lines of railway through the city of Abilene; its passenger station and only line of railway through said city being located thereon. Plaintiffs' right, or interest, in the land, or use to be made of same, was alleged to be that when the railway company was the owner of a large tract upon which the town of Abilene was located, it made and exhibited a plat of said town showing thereon lots and blocks, streets and alleys, which plat was recorded in the office of the county clerk of Taylor county, and that all of the lots of said town then owned by the railway company were sold and conveyed according to said map or plat, which was referred to in the conveyances; "that on said map or plat aforesaid, all of the above described land, together with other lands not therein described, was designated by lines on said map entirely enclosing said lands, and indicating the railroad of said defendant company running through the middle thereof, and in said space on said plat or map was written the words 'reserved for railway purposes' by which said defendant reserved for said railway purposes only" all of said land.

It was further alleged that the plaintiffs were the successors in title to the original vendees of the lots sold with reference to said map or plat, and that by virtue of the dedication of said town as contained in said map, and by virtue of conveyances made with reference to said map and the reservations and restrictions therein contained, an express servitude and covenant was created in and upon the lands above described in favor of said purchasers of said original lots, and the plaintiffs as successors in interest and remote grantees of such original purchasers "are entitled to enforce the covenant that said lands above described would be used for the sole and only purpose therein designated and for no other purpose." Regarding further allegations of plaintiffs' pleading, it is sufficient to say that it was averred that the defendants were threatening to use the portion thereof between the abutment of Cedar street and the abutment of Butternut street (a strip diagonal across said land and railway tracks) to construct and maintain thereon a pass for automobiles, vehicular and pedestrian traffic, and that such was not a railway purpose, and thereby constitutes an invasion and trespass upon the vested rights of plaintiffs as remote grantees of the original owners of lots in the original town of Abilene. Participation by all the defendants in such purpose was alleged.

Upon the trial it was formally agreed that at the time the original town of Abilene was laid out and platted, the railway company owned all the land (upon which the original town was located), and at that time "the only tracts or parcels of land reserved for public use or purposes was the now existent courthouse tract and the now existent federal tract," being blocks Nos. 20 and 31 in Abilene.

The city of Abilene defended on the ground that the building of the underpass was for public convenience and necessary in eliminating traffic hazards because of the crossing of the railroad, and further because of its municipal powers to require the railway company to construct and maintain suitable crossings over said property, and to abandon, change, or alter the same, etc.

The railway company contended that the underpass would enable passengers and vehicular traffic to go under the railway and avoid the existent dangers of grade crossing. It further contended that the underpass was advantageous to the railway company in relieving traffic at said grade crossing and the hazards incident thereto, and that the construction of the underpass would be a railway purpose. It further contended that the underpass would not damage plaintiffs, and further invoked the right of the city of Abilene to make and change grade crossings, etc.

In a nonjury trial the court gave judgment for the defendants, from which the plaintiffs prosecute this appeal.

We shall deal with the questions presented upon this appeal upon the assumption that the plaintiffs, as remote grantees of the original purchasers of the lots owned by them, acquired and have some interest in the use of the strip of land across which it is proposed to construct the underpass. We so held in Texas & P. Ry. Co. v. Chandler (Tex. Civ. App.) 20 S.W.(2d) 380, and Gulf Refining Co. v. Dishroon (Tex. Civ. App.) 13 S.W.(2d) 230. The question we are called upon to determine in the instant case is whether that interest, whatever its extent or nature, and assuming its existence, is such as entitled the plaintiffs to the injunction sought. Plaintiffs alleged the fee-simple title to the strip of land in question to be in the railway company. The power of the city of Abilene to condemn the land for the construction and maintenance of the underpass, both as against the railway company and the plaintiffs, is conceded. The statutory grant of the power of eminent domain is upon the condition, among others, that the agency of sovereignty seeking to acquire private property for public use be unable to agree with the owner of the property upon the amount of compensation to be paid. R. S. 1925, art. 3264. We are of the opinion that when a municipality having the right to condemn land for public use can reach an agreement with the owner of the fee-simple title to the land, it is not necessary to institute condemnation proceedings. The statutory condemnation proceeding is not necessary in such a case in order to appropriate the land as against the claim of persons whose only interest therein is merely that of a servitude. Decisions are to be found which indicate the contrary, but in McCammon & Lang Lumber Co. v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870, the Supreme Court declared an important distinction between taking and damaging land for public use. It was held that compensation must be made in advance for a *taking*, but that compensation in advance is not required to be made for damaging land. The plaintiffs in the instant case if they have any in-

terest in the land in question, have only such an interest as will not be *taken* by the construction and maintenance of the underpass, but which, if affected at all, will only be *damaged*. We think the decision in the last-cited case compels the conclusion that the plaintiffs would not have been necessary parties to a condemnation suit, had such suit by reason of a failure of the city and the railway company to agree upon the amount of the compensation to be paid have been necessary. If the plaintiffs would not have been necessary parties to a condemnation proceeding then certainly, we think, they have no right, by injunction, to prohibit an appropriation of the land while admitting that the owner of the land by fee simple title is joining with the municipality having the power of eminent domain, in the appropriation of the land to an undoubted public use. That in such a case the plaintiffs would not be necessary parties to a statutory condemnation proceeding has been determined in City of Houston v. Wynne (Tex. Civ. App.) 279 S. W. 916, and Wynne v. City of Houston, 115 Tex. 255, 281 S. W. 544.

It may be noticed in this connection that there was neither pleading nor proof of any damages which would be suffered by the plaintiffs by reason of the construction and use of the underpass, except, of course, such, if any, as would necessarily, as a matter of law, result therefrom. Since, as we have said, the interest of the plaintiffs in the use of the strip of land for railway purposes, whatever its true nature, was such only as would give rise to a claim for damages, if any, and that only upon a showing that the construction and use of the underpass was not a railway purpose, it was necessary in any event that the plaintiffs allege and prove damages.

In oral argument it was conceded, and indeed it could not be contended otherwise, that if the construction of the underpass was for a railway purpose there would be no infringement of any right of the plaintiffs. The undisputed evidence in the case shows that public streets with grade crossings over the railroad were already maintained across the strip of land in question. It must be assumed that the appropriation of a part of the land for the purpose of these streets was lawful. We are, therefore, required to view the underpass project, not as an original laying out of a street across the land, but rather as a change in existing streets. From the standpoint of the railway company the underpass should be regarded, we think, not as an appropriation of the strip of land to some new purpose other than a railway purpose, but as a means of making a better and safer use of the property for railway purposes. The construction and maintenance of the underpass is analogous, it seems to us, to the construction and maintenance of the fence considered in Craig v. Fort Worth & D. C. Ry. Co. (Tex. Civ. App.) 185 S. W. 944, 947, as to which it was said: " * * * the maintenance of the fence is not an additional use of the property, but rather a means adopted for the protection of the defendants in the exercise of the uses specially enumerated in the decree of condemnation."

If the railway company's interest in the land was only that of an easement for "railway purposes," the fee title being in another, subject only to such easement, there could be no doubt, we think, that the owner of the land subject to the easement would have fully as great interest in confining the use of the land to railway purposes as the plaintiffs in this case can possibly have. In Olive v. Sabine & E. T. Ry. Co., 11 Tex. Civ. App. 208, 33 S. W. 139, 142, Judge Williams, while a member of the Court of Civil Appeals, enumerated certain uses of an easement for railroad right of way purposes (a more restricted use than "railway purposes") which could not be interfered with by the owner of the fee, and included therein "the keeping of its premises in proper and safe condition for the prosecution of its business, and *the protection of others from injuries to result from any of its omissions.*" (Italics ours.) There is no room for argument, we think, that under the evidence in this case the underpass will serve as a means of better and more safely using the property in question for "railway purposes." Upon the assumption already mentioned that the plaintiffs can have no greater right or interest in the land of which the railway company has the fee-simple title than would be the case if the plaintiffs were the owners of the fee, and the railway company the owner of only an easement for "railway purposes," the decision in Roaring Springs Townsite Co. v. Paducah Tel. Co., 109 Tex. 452, 212 S. W. 147, is not distinguishable, we think, from the instant case. In that case a townsite company, the owner of certain land, platted a townsite thereon, and therein designated and dedicated certain streets, etc. The townsite company remained the owner of the land included in the streets burdened with the easement of the public to use same for street purposes. It sought to enjoin a telephone company from erecting poles and wires along one of the streets. The

right to prevent such action was denied on the ground that the erection and maintenance of the telephone line, being also a public use of the street, was not inconsistent with, nor an interference with, the public use to which the land was already dedicated.

We, therefore, conclude that the judgment of the court below should be affirmed, and it is so ordered.