PATRICK RILEY & another *vs.* THE BOSTON WATER POWER COMPANY & others.

Trover will lie against the *bonâ fide* purchaser of loads of earth wrongfully taken from the plaintiffs' land, and without any demand and refusal, although the defendant was ignorant of the trespass when he converted the earth to his own use.

TROVER for three hundred and ninety four squares of dirt, sand, and gravel. The defendants pleaded separately. At the trial in the court of common pleas, before *Wells*, C. J., it appeared that the Water Power Company had contracted with the other defendants, Dalrymple and Lennon, to fill up a parcel of flats owned by the company, at a certain price per foot. In executing this contract, said Dalrymple and Lennon, purchased earth of different persons by the load, delivered at the filling ground; and there was evidence that some earth

had been taken from the plaintiffs' land without their consent, and sold by the trespassers to Dalrymple and Lennon at the ground. The defendants, Dalrymple and Lennon, requested the judge to instruct the jury that the earth was real estate, and therefore this action could not be maintained. But the judge instructed them that as soon as the earth was unlawfully severed from the freehold by the persons who sold it to Dalrymple and Lennon, it became personal property in their hands, and that this action might be maintained. They also requested the judge to instruct the jury that by bringing an action of trover, the plaintiffs waived the trespass to the land, and thereby adopted the act, by which the property came into the possession of the vendors; and therefore that the plaintiffs could not maintain an action against *bonâ fide* purchasers, not having notice of the trespass. But the judge instructed the jury that this action could be maintained against *bonâ fide* purchasers without notice of the trespass.

The defendants further requested the judge to instruct the jury that, if the earth came to the possession of the defendants as *bonâ fide* purchasers, not having notice of the trespass, the plaintiffs must prove a demand on them before the commencement of the action and a refusal to deliver. But the judge instructed them, that if, without knowing of the trespass, Dalrymple and Lennon purchased the earth *bonâ fide,* and paid a full equivalent for it to the trespassers, and directed them to tip it up on the filling ground, they would be liable in this action for the value of the earth at the filling ground, and no demand or refusal would be necessary. And if, on the other hand, the defendants Dalrymple and Lennon knew where the earth was taken from, and ordered or procured the diggers to take it from the plaintiffs' lot, they would then be liable in this action for the value of the earth at the place where it was dug.

The jury found a verdict in favor of the Water Power Company, and against Dalrymple and Lennon, and they excepted to all said rulings.

*S. J. Thomas,* for the defendants.

*P. W. Chandler,* for the plaintiffs.

DEWEY, J. It is certainly true that for an injury to his real

estate, the party cannot maintain trover. That form of action is appropriate exclusively to the recovery of damages for the unlawful conversion of personal property. But this being granted, the further inquiry is, whether the three hundred and ninety four squares of earth severed from the land of the plaintiffs, and removed from the same and sold to the defendants, and used by them, was at the time of such purchase by the defendants, and use of the same, still a part of the realty, and retained unchanged its character as such, or whether by the act of separation in fact, and a removal of the earth to a distant place, it has not changed the character of the earth so removed to that of personal property. It seems to us that it is very well settled that whatever is severed from the land,—as, in the familiar case of standing timber trees—if such trees being a part of the realty, are cut down, they cease to be real estate and become personal. But this transmutation, while it changes the character of the property in this respect, does not change its ownership. It would not do so if cut down by the owner of the land, and not any more so, by being cut down by a person entering unlawfully upon the land and making the severance. It is the actual severance that changes the property from real to personal, and that irrespective of its being done with, or without, the consent of the owner of the land. And in this respect we see no distinction between removing living trees, deriving their nourishment from the earth, and the removal of a portion of the earth itself.

It is next objected that the plaintiffs, by bringing this action of trover, and waiving their action of trespass *quare clausum*, have adopted and sanctioned the original act of trespass, and therefore cannot maintain this action against one who purchased the earth *bonâ fide* of the trespassers. We do not perceive that any such waiver appears. It is true that the plaintiffs have not elected to institute an action of trespass *quare clausum* against the original wrong doers. But as regards these defendants, who have the property of the plaintiffs without right, nothing is waived; they did not commit any trespass upon the plaintiffs' land, and no action could have been maintained against these defendants therefor. Their

first connection with the plaintiffs' property was after it had been severed from the realty, and the only mode of enforcing a claim against them for the value of the same is by a personal action. If the plaintiffs have not this remedy, they are remediless as to any recovery against those who have received and converted to their own use their property. Take the case of valuable timber trees, cut down and carried away from the land, and sold by a mere trespasser. Is the owner of the same deprived of all remedy against any person who may have received these timber trees by purchase from the trespasser? He is so, unless trover will lie; for trespass *quare clausum* will not lie against such purchaser.

It is further contended that if the defendants were *bonâ fide* purchasers, and without notice of the trespass, the plaintiffs must prove a demand on the defendants and a refusal by them to redeliver before the commencement of the action. The court ruled upon this point, if such purchase was made in the manner above stated, yet if they received the earth from the trespassers by a purchase for their own use, and directed that the same be deposited on the filling ground, they would be liable without any such demand and refusal. This ruling may be fully supported upon the ground of a conversion in fact of the earth, and the impracticability of a redelivery of the earth after it had become thus intermingled with the soil of the land on which it was placed, and had become a part of the solid earth. Whenever there has been an actual conversion, or whenever the property has been thus appropriated, it is evidence of a conversion which supersedes the necessity of any demand. This view is to us a satisfactory answer to the objection here urged, that there was no proof of a demand. But upon other grounds, under the late decision of this court in the case of *Stanley* v. *Gaylord*, 1 Cush. 536, a case where the whole subject was much considered, and where the court came to the result that a *bonâ fide* purchase from one who had the actual possession of the property, but without any right to retain possession as against the lawful owner, and actual taking the same under such purchase into the custody and control of the

purchaser; would subject him to an action of trespass or trover at the suit of the lawful owner, without any previous demand.

*Exceptions overruled.*