No. 1,523.

## The Board of Commissioners of Rush County *v.* Trees.

Bill of Exceptions.—*Filing, How Shown.—Record Entry.—Clerk's Certificate.*—If a bill of exceptions be preceded by a proper record entry showing the filing of the bill of exceptions, the bill is properly in the record, notwithstanding the clerk's certificate does not show the filing of the bill.

County.—*Liability for Materials Appropriated for Approaches to Bridge.* —The simple fact that an agent of the county tells the landowner, at the time he takes dirt from the land of such owner, that the county does not intend to pay anything therefor, does not entitle the county to take such property without compensation.

Same.—*Action.—Election of Remedies.—Appropriation of Material.*—The severance of the dirt from the realty changed it into personal property, and the landowner was as much the owner after the severance as he was before, and he has his choice of remedies, either to sue for the damage to the land or for the value of the personal property converted, or both.

Same.—*Tort.—Contract.—Election of Remedies.*—Where the transactions may be construed either as a tort or an implied contract, the plaintiff may waive the tort and sue on the contract.

Evidence.—*Irrelevant.*—It is not error to reject evidence which is immaterial to the issue.

From the Shelby Circuit Court.

*W. J. Henley* and *L. D. Guffin,* for appellant.
*K. M. Hord* and *E. K. Adams,* for appellee.

Reinhard, J.—The only specification of error is the overruling of the appellant's motion for a new trial. It is earnestly contended by appellee's counsel that the bill of exceptions is not properly in the record, there being no sufficient certificate of the clerk. It is true that in the clerk's certificate to the transcript there is no recital of the filing of the bill of exceptions. But the transcript does contain a record entry just preceding the bill of exceptions, which shows "that on the

24th day of August, 1894, in vacation of the Shelby Circuit Court, and within the time limited therefor by the court, the defendant, by its attorneys, filed in the clerk's office of said court its bill of exceptions herein, tendered to and signed by the Hon. William A. Johnson, sole judge of said court, at chambers, on the 21st day of August, 1894, which bill of exceptions was then and there ordered by said judge to be made a part of the record of this cause, and the same reads in the words and figures following, to wit:'' (Then follows the bill of exceptions.) We think this is not only a sufficient showing of the filing of the bill of exceptions, but that it is to be commended as a model of good practice. This recital in the transcript was evidently overlooked by counsel for appellee, else we are sure they would not have urged the point. See *Gish* v. *Gish*, 7 Ind. App. 104; Elliott App. Proced., section 805; *Richwine* v. *Jones*, 140 Ind. 289.

The appellee filed a claim before the board of commissioners against the county for 2,300 cubic yards of dirt at 8 cents a yard, making $184, and giving credit for a balance due from him on a donation for the construction of the approach to a bridge in Rush county of $34, leaving, as he alleged, a balance due him of $150. The board disallowed the claim and the appellee appealed to the circuit court, where the cause was tried by a jury and a verdict rendered in favor of the appellee. The insufficiency of the evidence was assigned as a ground for a new trial. The account filed, which stands for the complaint in this case, proceeds upon the theory of an implied contract between the appellant and appellee.

It appears from the evidence that the board of commissioners erected the abutments and superstructure of a bridge and all of the bridge except the approaches at Webb's Ford, on a public highway in Rush county, In-

diana, crossing Big Flatrock river, in 1893.   There was
evidence to show that the dirt for which the verdict was
rendered was taken by the commissioners, in building
the approaches to the bridge at the point mentioned; that
the appellee told the appellant's superintendent, before
the dirt was taken, that if he took the dirt, he, appellee,
would claim pay for it from the county.   There is also
evidence to show its value.   We think the evidence suf-
ficient to support the verdict.

Appellant insists that if there was any just claim by
appellee against appellant, it must be by reason of dam-
ages to his land, and that as this was a tort the present
action could not be sustained.   We think the evidence
fairly sustains the appellee's theory of an implied con-
tract, but if the appellant is liable in tort, the appellee
would have a right to waive the tort, and sue as upon
contract.   26 Am. and Eng. Encyc. of Law, 774; *Furry*
v. *O'Connor*, 1 Ind. App. 573.

Moreover, if the agents and officers of the county com-
mitted a trespass upon appellant's land, whereby the
county received certain benefits, we know of no reason
why the county should not be held liable on an implied
contract for the value of the dirt received.

Much stress is laid by appellant's counsel upon the
fact that when appellant's superintendent got the dirt he
told appellee he had no authority to make any contract
for dirt, and that the commissioners would not pay for
it.   The appellee testified positively that he told the su-
perintendent that if he took the dirt from where it was
taken, the commissioners must pay for it, and that the su-
perintendent replied that this was a matter between ap-
pellee and the commissioners. He stated that he told the su-
perintendent he had already donated $100 for the build-
ing of the bridge, and did not propose to give any more,

but would allow him to take the dirt from another place on his farm, out of a certain hill, and would give him that free of charge, but that said superintendent refused to take it from there, saying it was too far to haul it.

We know of no law that gives a county the right to take such property from a man, without compensation, simply because the agent of the county tells the owner, at the time, that the county does not intend to pay anything. Of course, if the owner consents to such an arrangement, there is nothing to keep the parties from carrying it out; but here the appellee strenuously denies that he ever assented to the taking of this property except for pay. There is sufficient evidence to support the verdict.

During the trial, the appellant offered to introduce in evidence a contract made between appellee and certain other parties on the one hand and the board of commissioners on the other, by the terms of which the appellee and said other parties agreed to build all the approaches to said bridge at their own expense, as directed by the said board, under the direction of the superintendent of construction. The second paragraph of the appellant's answer relied upon this contract as a defense. In it it is alleged that the material claimed for in the complaint is the same as that mentioned in the contract, and that nothing is due the appellee for the same.

The court sustained the appellee's objection to the introduction of this contract, and this ruling, it is insisted, constitutes reversible error.

The contract referred to is a proposition on the part of the appellee and others to the board, that if the latter would turn over to them all the subscriptions theretofore taken from citizens for building the approaches to said bridge, without recourse upon the county, the appellee and said others would donate and perform all the labor necessary to build, and would build, all the ap-

proaches to said bridge, as might be directed by the superintendent of construction, and if the subscribers to said proposal failed to perform the labor as therein set forth, and within the time agreed upon (60 days), they would pay said board of commissioners the sum of $600 as liquidated damages for such failure; the contract to take effect upon its acceptance by the board. At the foot of the paper the following is added:

"I agree to stand good for one hundred dollars of the above mentioned six hundred dollars for approach to bridge at Webb's Ford. (Signed)

"C. E. TREES.

"ISAAC WEBB.

"ARTHUR WEBB.

"HARRISON MILLER.

"THOMAS STARK."

There is not contained in this contract a single word or sentence by which the appellee or those who signed it with him agreed to supply any portion of the materials for building said approaches. All they agree to do is to donate and perform the labor therefor. We do not see, therefore, how the contract could have been any bar to the appellee's right to a recovery, or could in any manner have tended to defeat the action. The court may have erroneously overruled a demurrer to the answer setting up this contract, but this would be no excuse for overruling an objection to the introduction of the contract in evidence. The averments of this answer are, perhaps, broad enough to justify the court in overruling the demurrer to it, unless the contract itself, filed as an exhibit, must be looked to in order to determine the sufficiency of such answer. Besides, the contract, in so far as it affects the appellee, seems to limit his liability to a donation of $100 in case the approaches are not constructed as agreed, and there was no testimony

that the appellee was in fact a party to the construction of the approaches. The court stated, at the time the objections were offered, that if it were shown that Trees was a party to the fill, it would allow the appellant to introduce the contract. An attempt was made to do this, but unsuccessfully.

Even if it had been shown that the appellee agreed to furnish the dirt, as well as to perform the work upon these approaches, the contract fixes the appellee's liability in case of failure, and in no event would the appellant be justified in going upon the appellee's land and taking away the dirt contrary to his will and direction, although in that case we are not prepared to say that the contract would not have become proper evidence as a part of the history of the transaction between the parties. But, as the appellee never agreed to furnish any portion of the material for the approaches, the contract could not have thrown any light upon the case and was properly excluded.

The court committed no error in instructing the jury that "if the defendant, by its agent or otherwise, took from the premises of the plaintiff, outside of the limits of the highway upon which the fill was made, without the consent of the plaintiff to part with the same without receiving any compensation therefor from the defendant, then there would be an implied obligation upon the part of the defendant to pay the plaintiff the market value of the dirt taken, if any, as aforesaid, and the market value thereof would be the market value of the kind and character of the dirt taken in the neighborhood of said fill, if any."

There is no merit in the contention that no implied contract could exist against a board of commissioners, and that the only liability such board could incur would

be for damages, and not for the market value of the dirt. Granting as appellant contends that the acts of the agents of the county amount to a tort for which the county might be liable, we think, as already indicated, that the appellee could waive the tort, and sue on an implied contract. But there was some evidence, at least, to the effect that the appellee gave permission to the county's agent to take the dirt provided he was to receive pay for the same. If this was true, and the agent or superintendent took the dirt, he could have taken it only upon the condition prescribed, and that he had the power to thus bind the county we think is decided by the authorities in analogous cases. *Board, etc.,* v. *Hill,* 122 Ind. 215 (222); *Board, etc.,* v. *Motherwell Iron and Steel Co.,* 123 Ind. 364.

The appellant offered to introduce testimony showing the value of appellee's farm both before and after the taking of the dirt. To this the appellee objected, and the objection was sustained. This ruling was proper. The appellee certainly had the right to recover the market value of the dirt without reference to the question of any depreciation of the farm. The severance of the dirt from the realty changed it into personal property, but the appellee was just as much the owner after the severance as he was before, and generally speaking the owner has his choice of remedies, either to sue for the damage to the land or the value of the personal property converted, or in a proper case he may recover, besides the value of the property taken, the depreciation in the land, if any. *Knisely* v. *Hire,* 2 Ind. App. 86; 26 Am. & Eng. Encyc. Law 774.

Other errors are suggested in the brief of appellant's counsel, but they are not so presented as to require us to pass upon them. We have not been shown any error in

the record, which would justify a reversal of the judgment below.

Judgment affirmed. ·

Filed April 23, 1895.