# Nashville, Chattanooga & St. Louis Railway *v.* Karthaus.

*Trover and Conversion.*

(Decided May 6, 1907. 43 So. Rep. 791.)

1. *Appeal; Harmless Error; Striking Pleas.*—It was harmless error to strike pleas where the matters therein set up were admitted under the general issue.

2. *Executors and Administrators; Action by Heirs; Injury to Land.*—The heirs of a decedent may maintain trover for sand taken from the land of decedent during his lifetime, where the administrator has never taken any possession of the land or asserted rights to the rents, income and profits, thereof.

3. *Railroads; Right of Way; Rights Acquired Therein.*—Although a railroad has acquired rights of way over certain land it acquired no right thereby to excavate sand from the right of way for the purpose of selling it.

4. *Same; Trover and Conversion.*—A railroad having a right of way over land which excavates sand therefrom and sells it is liable in trover to the owner of the fee for the sand so sold notwithstanding it is loaded on cars on the right of way for the purpose of being transported to the purchaser.

5. *Evidence; Hearsay.*—A witness cannot testify that he has always heard that a railway had a right of way over certain lands.

6. *Trover and Conversion; Measure of Damages.*—In trover for removing sand from land and selling it the measure of damages is the value of the sand at the place of sale and the interest thereon.

7. *Deposition; Actions in Which May be Taken.*—Sections 1850 to 1859 inclusive are applicable to an action in trover as to other civil actions.

[Nashville, Chattanooga & St. Louis Railway v. Karthaus.]

APPEAL from Madison Circuit Court.

Heard before Hon. D. W. SPEAKE.

This was an action begun by the heirs of Karthaus, to recover damages for certain sand alleged to have been taken by the railroad from its right of way through and on plaintiff's land, and sold in the market. The defendant insisted by way of defense that the sand was taken off of the hundred feet right of way owned by the road, and that the sand belonged to them and not to the plaintiff. The following charges were requested by the defendant and refused by the court: (1) "If the jury believe from the evidence in this case that the taking of the sand was not willfully or intentionally done, but was done under the honest belief that the railway had a right to remove it, then if you find for the plaintiff, your verdict cannot be for more than the value of the sand at the time and place of its conversion, after its severance from realty after deducting the freight and costs of loading the same on the cars with interest to date." Charge 2 is similar to 1. (3) "If the jury believe from the evidence in this case, that the sand sued for in this case was the sand which had fallen into the cut, so as to impede the operation and passage of the railroad train, and that the same was removed in order to permit the railway to safely and properly operate its road, then the railway had the right to do what they pleased with the sand so removed, and could dump it into the trestle or ship it to Huntsville or anywhere else they wished to on their line of road." (5) "I charge you, gentlemen, that if you believe from the evidence in this case that the defendant entered into possession of a strip of land fifty feet in width from the centre of the track of the railway at the place where the sand was taken under the deed from the T. & C. Ry. Co., and was in continuous, open, uninterrupted possession thereof, from that time to the 6th day of April, 1901, and since then, the plaintiffs cannot recover for any sand taken from said land before the said 6th day of April, 1900." (6) "I charge you, gentlemen, that if you believe the evidence in this case, the plaintiffs have no right to maintain this suit in their own name." (8) "I charge you, gen-

[Nashville, Chattanooga & St. Louis Railway v. Karthaus.]

themen, that the burden of proving the value of the sand taken is upon the plaintiff, and if you find from the evidence that the plaintiffs have failed to prove any value of the sand at the time and place where taken, then if you should find for the plaintiffs, your verdict can only be for nominal damages. (9) The general affirmative charge with hypothesis.

OSCAR R. HUNDLEY, for appellant.—This was a personal action and should have been brought in the name of the administratrix.—Section 35, Code 1896; *Karthaus v. N. C. & St. L. Ry.*, 140 Ala. 437; *Macey v. Howard*, 91 Ala. 133. If entitled to recover at all, plaintiff could only recover in trespass and not in trover.—*Carlisle v. Killibrew*, 89 Ala. 329; *Thweatt v. Stamps*, 67 Ala. 96; *McLain v. Bovee*, 24 Wis. 295; *Glencoe L. & G. Co. v. Hudson Bros., et al.*, 60 Am. St. Rep. 563. In our state the common law distinction between trespass, trover and detinue is preserved.—*Warrior C. & C. Co. v. Mabel Mining Co.*, 112 Ala. 626. The court erred in not permitting defendant to prove that the sand had no market value at the sand bank.—*Bir. Min. R. R. Co. v. Tenn. C. I. & R. Co.*, 127 Ala. 147; *White v. Yawkey*, 108 Ala. 370; *Ivey C. & C. Co. v. Ala. C. & C. Co.*, 135 Ala. 579. The plaintiffs cannot recover in this case because the defendant railway was in adverse possession of the land from which the sand was taken at the time of the conversion.—*T. & C. R. R. Co. v. Taylor*, 102 Ala. 224; Section 2477, U. S. Revised Statutes. The plaintiff cannot maintain trover because defendant was in the adverse possession at the time of the conversion and the title is not an issue.—*Brooks v. Rogers*, 101 Ala. 122; *Beatty v. Brown*, 76 Ala. 269; *Cooper v. Watson*, 72 Ala. 254. The court erred in refusing charge 3.— *Alabama Mid. Ry. Co. v. Brown*, 98 Ala. 648; *A. G. S. Ry. Co. v. Elliott*, 137 Ala. 560; *Haley v. K. C., etc., R. R. Co.*, 113 Ala. 640. The court erred in refusing to give charge 4.—1 Sutherland on Damages (3rd Ed.) § 105; 4 Sutherland on Damages (3rd Ed.) §§ 1113 and 1117.

[Nashville, Chattanooga & St. Louis Railway v. Karthaus.]

COOPER & FOSTER, for appellee.—The suit was properly brought in the name of the heirs.—*Leatherwood v. Sullivan,* 81 Ala. 458;; *Calhoun v. Fletcher,* 63 Ala. 574. The appellant had no right to sever any part of the corpus and sell it or otherwise convert it to any use except for railroad pusposes.—*Vermilya v. C. M. & St. P. Ry. Co.,* 55 Am. Rep. 279; *Aldrich v. Dowry,* 5 Am. Rep. 624; *Chapin v. Sullivan R. R. Co.,* 75 Am. Dec. 237; *Morgan v. Donovan,* 58 Ala. 241; *Wilkes v. G. P. R. R. Co.,* 79 Ala. 180. The court did not err as to the measure of damages.—*B. M. R. R. Co. v. T. C. I. R. Co.,* 127 Ala. 147: *White v. Yawkey,* 108 Ala. 270; *Wooden Ware Co. v. U. S.,* 106 U. S. 432; 28 A. & E. Ency. of Law, 722.

HARALSON, J.—The suit was by the heirs of E. Karthaus, against the Nashville, Chattanooga & St. Louis Railway, to recover $2,500 for the conversion by it, at different times between April 16, 1900 (the date of the death of said Karthaus), and August 29, 1902, (the date of the institution of this suit), of 6,000 cubic yards of sand, alleged to be the property of the plaintiffs.

The complaint as first filed, contained a count for the conversion of the sand in 1900-1902, and a count, also, for trespass for taking the sand. As a result of the pleading in the cause, this complaint was amended by striking out the count in trespass, and amending the trover count, so as to claim damages for sand taken after the death of Karthaus, the original owner of the land and father of plaintiffs, up to the time of the bringing of this suit.

There were pleas filed by the defendant,—of not guilty, and the statute of limitations of six years. Other pleas were stricken, on the ground that the matters and things set up in them, if available as a defense, were available under the general issue. It appears that all these defenses were allowed to be shown in the progress of the trial, under that issue, and, if there was error in strinking said pleas, it was error without injury.

2. The main matters of defense were, that the plaintiffs were not in legal possession of the lands from which

the sand was taken, and that it was taken from lands owned by E. Karthaus, the father of plaintiffs, in his lifetime; that at the time of the bringing of this suit, said Karthaus was dead, and there was an administrator of his estate duly appointed and qualified, and who was acting as such.

3. Considering the case under the general issue and as though the plea in respect to an administrator on the estate of said Karthaus had not been stricken, it appears that Carrie A. Karthaus, the widow of deceased, was, on the 25th of May, 1900, duly appointed and commissioned as administratrix of said estate, and on November 1, 1904, she reported that the assets of said estate had been applied to the payment of the debts of her intestate which had come to her knowledge, and she had made distribution to the children and heirs at law of said decedent. There was no evidence of any other debts remaining unpaid, nor that the administratrix had ever taken possession or control of any of the real estate of her intestate for the purposes of administration.

In *Calhoun v. Fletcher*, 63 Ala. 580, it was held, "that, upon the death of one seised of a hereditable estate in lands, the title descends, eo instante, and vests in the heir at law; * * * that to suspend or destroy the heir's right to the possession of the inheritance, the personal representative must actually take possession or must assert his right, and follow it up with the means necessary to that end, * * * and that, pending administration, it is only actual possession of the personal representative, or his asserted right thereto, followed up by proceedings to obtain possession, or his asserted right to the rents, income and profits, that can take away, or suspend ,the right of the heir (or devisee) to prosecute a suit for the possession of lands descended or devised, or any other action which such heir (or devisee) could maintain by the rules of the common law. It requires action by the personal representative to divest the heir of his right to the inheritance, with all common-law incidents; and in the absence of action, effective action, the right remains with the heir." To the same effect is *Leatherwood v. Sullivan*, 81 Ala. 463, 1 South. 718;

*Stovall v. Clay,* 108 Ala. 105, 20 South. 387; *Banks v. Speers,* 97 Ala. 562, 11 South. 841. This defense was, therefore unavailing.

4.   It is contended by defendant, that it was in the adverse possession of the land, from which the sand was taken. The defendant claims and can claim nothing but an easement through these lands, which is never adverse to the owner, except for railroad purposes.

But, however long it may have had possession of this easement, it had the right to the use of the land for purposes of proper construction and maintenance of its road, and had no right to make excavations, or sever any part of the corpus of the property or convert it to any use except for railroad purposes.

In *Vermilya v. C. M. & St. P. Ry. Co.,* 24 N. W. 234, 66 Iowa, 606, 55 Am. Rep. 281, it was said: "When the right of way is acquired by ad quod damnum proceedings under the statute, the title of the timber, sand and the like, found upon the land, remains in the owner, and can be used by the corporation owning the railroad, only for the purposes connected with its construction and use"—citing *Preston v. Dubuque & P. R. Co.,* 11 Iowa, 15; *Henry v. Dubuque & P. R. Co.,* 2 Iowa, 288.

In *Aldrich v. Drury,* 5 Am. Rep. 624, 8 R. I. 554, the court held that "a railroad company, or any contractor employed by them to build a railroad, may use any material removed by them in grading the road, either in the adjacent, or it seems, in other localities, but they have no right to sell such material to other parties." What the court said in this connection, is so applicable to the case in hand, we venture to quote it:

"The property which they have in land within their location, has been likened to that which the public has in a highway; but owing to the peculiar purposes to which it is subservient, it is, and must be, in practical effect, much more absolute and conclusive.   *   *   * But, nevertheless, it does not extend beyond the exigencies of the road, and, therefore, while it entitles the company to use the earth gravel and stone within their location for all railway purposes, it does not entitle them to sell any such material. To allow them to sell would be

[Nashville, Chattanooga & St. Louis Railway v. Karthaus.]

to allow an abuse of their privileges to take land by compulsory process; for the privilege is accorded on the ground, that the land is taken for a public use, a railroad being deemed such, and not to sell again, either wholly or in part. It is urged in justification of defendant, that it was necessary, in bringing the road to grade, to make the cut and remove the stone. This may be, but, in order to do this, it was not necessary for him (the contractor) to sell the stone; and when he did sell the stone, under the sanction of the company, he did that which neither he nor the company had the right to do. Except for the purposes of the road, the stone belonged to the plaintiff, and, therefore, when, with the assent of the company, the defendant sold it, he sold the property of the plaintiff. Accordingly, we think the plaintiff, waiving the tort, may recover the proceeds of the sale in this action."

In *Morgan v. Donovan*, 58 Ala. 241, 263, construing a mortgage to a railroad, the court said: "The mortgage conveyed only such property, real and personal, as was useful and necessary, and employed in the construction, maintenance, operation, preservation, repair or security of the road, and that property owned or acquired, and not used, or to be used in connection with the railroad, and in promotion of the direct and proximate purposes of its construction, was not thereby conveyed."

Quoting this case approvingly, it was said in *Wilks v. G. P. R. Co.*, 79 Ala. 186, that "ownership of land, or an easement in land, except for purposes of its construction and operation, is not among the incidental powers of such corporation."

It must be held, therefore, that the company had no right to sell this sand to outside persons.

5. Defendant's counsel contend that, conceding defendant wrongfully took the plaintiff's sand, the action would be in trespass and not trover.

The reason for this insistence may be better stated in the language of counsel, who says in brief: "It must be remembered that the testimony shows without conflict, that the sand was a part of the realty on the land described in the deed. It was loaded on the cars of the de-

fendant railway and carried away.  It was never taken
out of the sand bank and left on the land for a moment;
the cars were simply loaded from the sand bank direct."
It is here apparently contended, that if the sand had
been taken from the bank and piled on the land or bank
of the cut, it would cease to be realty and would become
personalty, but if loaded first on the cars of defendant
it would be realty still, or would not be personalty.  The
distinction is of difficult perception.  It is well estab-
lished, that trover will lie for the conversion of trees,
minerals, etc., which counsel does not dispute.  In *Glen-
coe L. & G. Co. v. Hudson,* 138 Mo. 439, 40 S. W. 93, 36
L. R. A. 804, 60 Am. St. Rep. 563, the court say:  "Sand
or gravel, while in its original bed, is as much a part of
the realty as the earth itself.  After it has been mined
or separated from the land it may become the subject
of conversion, not before."

It is like growing crops on land, which unsevered are
a part of the realty, but when severed, become personal
property.—*Thweat v. Stamps,* 67 Ala. 96.

6.    There was no error in sustaining the objections
to the statement of the witness Romines, that he had al-
ways heard that the railroad had the right of way
through the land.  It was purely hearsay, and was, also,
immaterial.

7.    Ordinarily, the measure of damages in an action
of trover is the value of the personalty converted, with
interest to the time of the trial.  The measure of dam-
ages in this case was not the value of the sand in the
bank, before it became personalty after severance from
the freehold.  It is manifest that the plaintiff should
not be confined to the value of the sand, at the place
where the severance actually occurred.  As counsel for
plaintiff well say, "If defendant had been detected in
the act of loading the cars with sand or of removing it
from one point to another, and suit had then been
brought, the defendant could have answered that it took
the sand for the purpose of use in the maintenance of its
road, which it would have had the right to do, and it
was only when it sold the sand, that its purposes or in-
tentions were definitely made manifest and ascertained,

and so the place of sale was, really, the place of conversion, and the value of the property there, constituted the measure of damages.

8.  The fact that Mr. Karthaus paid only $450 for the tract of land on which the road was built was an immaterial fact.

9.  There was nothing in the objection raised against allowing interrogatories to be filed by the plaintiff to the defendant, because the action was in trover.  Section 1850, Code 1896, is applicable to all civil suits, and this one was of that character.—*S. R. R. Co. v. Bush,* 122 Ala. 472, 26 South. 168.

We have examined the charges of defendant which were refused and find no reversible error in their refusal.

There appears to be no reason for sustaining the motion for a new trial.

Affirmed.

TYSON, C. J., and SIMPSON, and DENSON, JJ., concur.