Samuel S. Palumbo, Trading as Palumbo Excavating Company, Appellee, v. Harry M. Quinn, Inc., et al., Defendants. Harry M. Quinn, Inc., Appellant.

Gen. No. 42,894.

Opinion filed June 16, 1944.

JOHN M. MAHONEY and EDWARD McTIERNAN, both of Chicago, for appellant.

ECKHART, KLEIN, McSWAIN & CAMPBELL, of Chicago, for appellee; PAUL HASSEL and M. A. PALUMBO, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Samuel S. Palumbo, doing business as Palumbo Excavating Company, sued Harry M. Quinn, Inc., Carrie F. Sittig and Charlotte D. White. Harry M. Quinn, Inc. filed a counterclaim against plaintiff. The case was tried by the court and at the conclusion of plaintiff's evidence the cause was dismissed as to Charlotte D. White. At the conclusion of all of the evidence the trial court found defendant Harry M. Quinn, Inc. guilty and assessed plaintiff's damages at $4,295.50; found the issues for defendant Carrie F. Sittig and entered judgment in her favor; and found the issues as to the counterclaim in favor of counterdefendant. While defendant Harry M. Quinn, Inc. (hereinafter called defendant) prayed an appeal from the judgment

for $4,295.50 entered against it and also from the judgment entered on the counterclaim, it makes no point as to the judgment on the counterclaim.

Count two of the complaint, upon which the judgment for $4,295.50 was entered, alleges, in substance, that on May 23, 1940, defendant Sittig sold and conveyed to plaintiff, by an instrument in writing, all the top soil from certain property (describing it) for a good and valuable consideration, which was fully paid; that plaintiff immediately stripped said soil, screened, processed and piled it upon the property, thereby making it completely prepared and ready for hauling purposes; that about June 18, 1941, plaintiff attempted to carry away the said soil and upon said date and other occasions he made a demand on defendants and each of them to deliver up possession and control of the said property; that he was at all times ready, willing and able to haul away the property; that on June 18 and 19, 1941, he was forcibly prevented from taking possession of his said property by defendant; that defendant, knowing that plaintiff was the true and lawful owner of said property and having had good and sufficient notice thereof, wilfully, maliciously and in utter disregard of the rights of plaintiff, assumed possession and control and withheld from plaintiff the said property and converted the same to its own use; that as a direct and proximate result of said acts and doings of defendant he was prevented from performing his contract to deliver said soil to the Federal Housing authorities, as he was bound to do, thereby delaying the completion of his said contract and causing him great expense and inconvenience; that he was compelled to purchase other soil at a great increase in price, which soil was not prepared for hauling, and he was thereby caused other expense for preparing it. The count alleges other damages alleged to have been suffered by plaintiff. Defendant's principal defense is that the land in question, together with all the hereditaments

and appurtenances thereto belonging, including the top soil, was its property.

In May, 1940, and for many years prior thereto, Carrie F. Sittig was the owner of four blocks of real estate on the southwest side of Chicago. The district in which the property is located is flat prairie land. There were no homes for miles around. There were no streets or alleys in the land in question and no improvements upon it. Mrs. Sittig, through her agent, Mrs. White, had been trying to sell the property for ten or twelve years. Someone *who wanted the top soil on the land* offered Mrs. Sittig $2,500 for the four blocks about six months before defendant bought the property from her. On May 23, 1940, she by her agent, conveyed to plaintiff, by bill of sale, all of the top soil from the four blocks of land. No time limit for the removal of the top soil was stated in the bill of sale, but plaintiff told Mrs. White that it would take over a year and that he would deliver the top soil to the Housing authorities from June, 1940, to July, 1941. The custom in the top soil trade is to make piles of the black dirt and allow it to remain standing for one or two years before delivery. Mrs. Sittig sold the four blocks of real estate to defendant and a deed was delivered and the purchase price paid on June 6, 1941. The deed makes no mention of the top soil that was piled upon the land. After the top soil had been conveyed to plaintiff he scraped from eight to ten inches of the top soil from the land, processed it to meet certain specifications, and piled it into eight or ten piles from five to nine feet high. The evidence conclusively shows that the top soil was severed, plowed, disced, pulverized, processed and made into piles on the land as black dirt long before defendant purchased the real estate. This entire work lasted from May, 1940, to August or September, 1940. It is undisputed that Mrs. Sittig and plaintiff treated the top soil, after it was severed, as personalty and both understood and

agreed that it was severed for the purpose of removing it from the land.

Defendant contends that the piles of black earth that were allowed to remain on the land are real estate and that title passed to defendant under the deed from Mrs. Sittig. Plaintiff contends that the piles of black dirt were personalty when the said deed was made and that title to the same did not pass by the deed.

In *Citizens Nat. Bank v. Kesl & Sons Co.*, 309 Ill. App. 273, a substantial recovery for the conversion of top soil was allowed. The court said (p. 277):

"It has been established by the courts of this State that where one wrongfully removes soil from the land of another, the latter is not restricted to a recovery of the difference in value of his real estate before and after the trespass, *but he may recover the value of the soil after it is severed from the land and becomes chattel property (Sikes v. Moline Consumers Co.*, 293 Ill. 112; *Washington Ice Co. v. Shortall*, 101 Ill. 46; *Piper v. Connelly*, 108 Ill. 646; *Donovan v. Consolidated Coal Co.*, 187 Ill. 28)." (Italics ours.)

The Supreme court (378 Ill. 428) affirmed the judgment of the Appellate court. Both courts treat top soil after it is severed from the land as personal property.

In *Anderson v. Todesca*, 214 Mass. 102, 100 N. E. 1068, the Massachusetts court held that soil wrongfully removed from land becomes on severance personalty, for the conversion of which action lies.

In *Riley v. Boston Water Power Co.*, 65 Mass. 11, it was held that trover would lie against the *bona fide* purchaser of loads of earth wrongfully taken from the plaintiffs' land, and without any demand or refusal, although the defendant was ignorant of the trespass when he converted the earth to his own use. The court held that the loads of earth when severed from the land became personal property.

In *Phillips v. Bowers*, 73 Mass. 21, the court followed the rule stated in *Riley v. Boston Water Power Co., supra.*

In *Board of Commissioners of Rush County v. Trees*, 12 Ind. App. 479, the court held (p. 485) that "the severance of the dirt from the realty changed it into personal property."

In 1 Tiffany, Real Property (2d ed.) the author states (pp. 866, 867):

"Sec. 253. Individual rights of ownership. The ownership of land *prima facie* includes the soil or earth, and also the minerals in or on the ground, and consequently the tenant in fee simple of the land is ordinarily the owner of all deposits or strata of clay, stone, iron, and other mineral substances, and such substances, while thus in place are things of a real, and not a personal character. The minerals *or the soil may, however, be removed from their natural position in or on the ground, and, when thus severed from the land by one authorized to make the severance, they become personalty, even though they still remain on or below the surface of the land, provided, it seems, their removal from their natural position is with a view to their ultimate removal from the land."* (Italics ours.)

The foregoing statement of the law applies to the facts of the instant case. Even manure, like earth, sand, or gravel, when severed from the soil, gathered up and secured for use elsewhere, becomes a personal chattel, and as such is a subject of conversion. (65 C. J. 25.)

But defendant contends that the piles of top soil were covered with weeds and allowed to remain on the land, and the top soil became reattached to the land, and, therefore, is real estate and title to the same passed to defendant under the deed of conveyance. We will consider this contention in connection with a further one urged by defendant, that it had no notice, either

actual or constructive, of the interest of plaintiff in the black dirt. Mr. Quinn, the president of defendant corporation, has been in the business of building and selling homes in Chicago for thirty-five years; he has built about three thousand homes on land that he bought. Long before the purchase of the property in question he was familiar with the property and the character of the surrounding land. He testified that he passed the property every day for six months before he bought it and that it was his duty, before it was purchased, to see that the property was suitable for building purposes. The trial judge was fully justified in finding that Quinn knew that the property was not suitable for building purposes but that the land in question and the land surrounding it had a substantial value for one reason,—black dirt covered the land. As we have heretofore stated, Mrs. White testified that she had been trying to sell the property for ten or twelve years and that six months before defendant bought it she had been offered $2,500 for it *by a man who wanted the top soil.* In other words, it was the black dirt, detached from the land, that was valuable. In his testimony, Quinn attempted to convey the impression that he was not familiar with black dirt as personalty. Indeed, he testified that he had often "seen piles of black dirt in different locations, but I don't know what it is used for." He admitted, however, that practically all homes are landscaped and that landscaping involved the spreading of black dirt upon the soil. The trial court was fully justified in finding that Quinn was familiar with the use of black dirt as personalty. In the fall of 1940 defendant, through Quinn, purchased a large tract of land at 77th street and Western avenue for a building project in which defendant agreed to furnish the landscaping. Plaintiff testified that defendant's attorney told him in May, 1941, that his client needed the dirt on the property in question "for his

own property." Quinn testified that when he inspected the property in question he could see that about twelve inches of dirt had been taken off the soil and that he saw piles of dirt on the land. Frank Hametta, a witness for defendant, testified that the ground had been stripped and the dirt put on mounds. The evidence also shows that before defendant bought the Sittig property there were piles of black dirt on two adjoining properties and that plaintiff had bought the black dirt on the said properties. The argument of defendant that the piles of black dirt on the Sittig property were covered with weeds and the ground surrounding the piles was covered with grass and weeds and that this condition caused the piles of black soil to be re-attached to the land, hardly merits serious consideration. Indeed, all who saw the piles had no difficulty in recognizing them as piles of black dirt. The piles varied in height from six feet to nine feet; they were fifteen to thirty feet wide at the base and from five to six feet wide at the top. A mere view of the premises plainly disclosed that the top soil had been stripped from the land and placed into large piles and that where the land had been stripped it left a depression from eight to twelve inches deep. Defendant received its deed to the land and paid for the property on June 6, 1941. Quinn admits that Palumbo told him in May, 1941, of his ownership of the top soil, and that his attorney contacted plaintiff around the end of May, 1941, in reference to "the dirt." Mrs. White, a witness for defendant, testified that in May, 1941, the people who bought the property told her that Palumbo was on the property and that he was taking soil off the lots. In May, 1941, the police told plaintiff that they had orders from Quinn to stop plaintiff from removing the dirt.

We find that the evidence conclusively shows that defendant had not only constructive notice but actual notice of plaintiff's interest in the black dirt piles

before it received the deed from Mrs. Sittig and paid for the property. The argument that plaintiff's title to the black dirt was not recorded is, of course, without merit, as the piles of black dirt were personalty and not real estate. The piles of black earth, in their processed condition, at the time defendant bought the Sittig property were worth, as personalty, $4,295.50, at least, and Quinn then knew their value. Defendant paid Mrs. Sittig, for the four blocks, $1,575, and yet it makes the unconscionable claim that it acquired, by its deed, not only the land in question but the piles of black earth that were upon it. Defendant purchased the land only, but the conclusion is unavoidable that Quinn had in mind, at the time of the purchase, holding by force the piles of black earth thereon. Defendant drove plaintiff off the land by force before it acquired the property and it retained possession of the piles of black dirt. It would be a serious reflection upon the administration of justice if defendant's scheme were to prevail.

Several other contentions are raised by defendant, but it would unduly lengthen this opinion to pass upon the questions raised therein. Suffice it to say that we have considered all of the contentions and find them without merit.

An able and experienced judge tried this cause, and we are satisfied that the judgment he entered was the only one that could justly be entered under the facts.

The judgment of the Superior court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J. concur.