122 So.2d 813 (1960)
Norman PETTIGREW, Appellant,
v.
W & H DEVELOPMENT COMPANY, Appellee.
No. 1714.
District Court of Appeal of Florida. Second District.
August 24, 1960.
Rehearing Denied September 26, 1960.
Harry M. Hobbs, Tampa, for appellant.
Morrison Buck and A.B. Angle, Tampa, for appellee.
OVERSTREET, MURRAY W., Associate Judge.
On February 27, 1959, plaintiff (appellant) filed in the Circuit Court of Hillsborough *814 County, Florida, his amended complaint sounding in trover against defendant (appellee) in which he alleged that prior to and after October, 1956, he owned fee-simple title to and was in possession of certain particularly described lands in Hillsborough County, Florida; that during the time from October of 1956 through April of 1957, the defendant did enter upon and did wrongfully remove or cause to be removed from said lands 5570 cubic yards of fill dirt; and that defendant had failed and refused to pay plaintiff a reasonable value for the dirt, which was $1.10 per cubic yard. In its answer, the defendant in effect denied all of the allegations of plaintiff's amended Complaint; specifically denied that plaintiff owned that portion of said property which is sub-surface, fresh water lake bottom; asserted that if any fill dirt was actually removed from any of plaintiff's property during the prescribed period of time, it was done by an independent contractor, without the knowledge, consent or ratification of defendant, and over whom defendant exercised no control, except as to the results of a job to be performed for defendant in dredging part of defendant's property in and about the same lake on which plaintiff's property was located; and that the excavation about which plaintiff complained was made many years prior to plaintiff's acquisition of said property by a dredging contractor who was not a party to the suit and with whom defendant never had any connection.
In the trial of the case before a jury, the evidence offered by plaintiff showed that during the involved period of time he was the owner and in possession of a long strip of land 100 feet in width on deep and navigable Cowhead Lake, also known as Estes Lake, extending by description seven to eight hundred feet into the lake, and adjoining and lying west of defendant's property; that a low area of defendant's land was being filled in by dredging; that two floating dredges were seen by several witnesses out in Cowhead Lake and fill sand was seen coming from pipes emerging from the lake onto defendant's lands; that some witnesses observed by eyesight and/or by photographing that one of the dredges was located on the water of Cowhead Lake over what they considered to be lake bottom land belonging to plaintiff; that both dredges belonged to a person named Harris, but the name of the operator was unknown, and it does not appear that either Harris or the dredge operator was ever consulted; that while the dredge was idle, plaintiff had a conversation with J.E. Harp, Secretary and Treasurer of defendant corporation, in which plaintiff told Harp if the dredge floated over and got onto his, plaintiff's property again, he, Harp, was going to have to pump a beach for plaintiff for nothing, and that Harp agreed that he would; that plaintiff did not know what arrangements W & H Development Company had made about the dredging; that after the dredging was completed, plaintiff discovered by swimming in the lake that there was a hole in the lake beginning about 150 feet from the shore line which had not been there prior to the dredging operations; that after he discovered the hole, plaintiff employed Allen B. Prim, a registered surveyor and engineer, who had one of his crews under his supervision to make soundings of the lake bottom in front of plaintiff's property by a professionally unrecognized method, as a result of which Prim testified there was a hole or depression in the lake bottom beginning about 150 feet from shore line from which 5570 yards of dirt had been removed, but that he did not know, and could not tell whether the hole was caused by dredging or by some other means; that the value of fill dirt at the time of trial was $1.10 per cubic yard. On being recalled, J.E. Harp testified that W & H Development Company claimed ownership of the property east of appellee's property and all of the dirt fill thereon.
Plaintiff then rested his case, and defendant moved the Court for a directed verdict, which the Court granted on the grounds that the evidence was insufficient *815 to show definitely (1) that the hole in the lake bottom was on land owned by plaintiff; (2) that defendant wrongfully removed or caused to be removed any fill dirt from plaintiff's land; (3) that the testimony of engineer Prim as to the amount of dirt removed was too speculative, and (4) that in trover the measure of damages is the value of the property at the time of conversion and not the value at the later time of trial. Verdict for defendant was rendered and filed on November 23, 1959. Judgment for defendant was entered on the same date. On December 8, 1959, plaintiff filed his Motion for New Trial, and on December 15, 1959, the Court denied the Motion because it was not filed within 10 days after rendition of verdict. In due time, plaintiff filed his Notice of Appeal, Assignments of Error, Designations to Reporter and Directions to the Clerk, and the case became lodged in this Court.
In order to make a proper disposition of this case, we shall consider several pertinent grounds set forth in appellant's Assignment of Errors, although they are not stated in the Assignment in exactly the same language as used by us.
First: Does an action of trover lie for fill dirt or sand removed from realty?
Although there is some authority to the contrary, the weight of authority seems to be that earth, sand, or gravel while remaining in its original bed, is a part of the realty and as such cannot be a subject of conversion; but where it has been severed from the soil, gathered up and secured for use elsewhere, or where it has been wrongfully severed and removed, it becomes personalty for the conversion of which an action of trover will lie. 89 C.J.S. Trover and Conversion § 24, p. 541; Cage Bros. v. Whiteman, 139 Tex. 522, 163 S.W.2d 638; Palumbo v. Harry M. Quinn, Inc., 323 Ill. App. 404, 55 N.E.2d 825; Nashville, C. & St. L. Ry. v. Karthaus, 150 Ala. 633, 43 So. 791, and Graham v. Purcell, 126 App.Div. 407, 110 N.Y.S. 813. We hold, therefore, that trover was a proper remedy in this case.
Second: Was there proper proof of damages by plaintiff?
The general rule, as to damages in trover, is the value of property at the time and place of conversion, with legal interest to the date of the verdict, unless the defendant is a wilful trespasser, in which event the measure of damages is the full value of the property at the time and place of demand or of suit brought. Robinson v. Hartridge, 13 Fla. 501; Skinner v. Pinney, 19 Fla. 42; West Yellow Pine Co. v. Stephens, 80 Fla. 298, 86 So. 241; Shaw v. Saunders, 79 Fla. 846, 85 So. 162, and Wright v. Skinner, 34 Fla. 453, 16 So. 335.
In this case, plaintiff's only proof of damages was that the sand was worth $1.10 per cubic yard at the time of trial. As this did not meet the requirements of the rules set forth above, plaintiff's proof of damages was wholly insufficient.
Third: Did the Court err in directing a verdict for the defendant?
Briefly the evidence shows that if the sand was taken from the lake bottom of Cowhead Lake and pumped onto the lands of defendant, it was done by floating dredges owned by a person named Harris. There is no evidence to show that the defendant removed the soil, and there is not sufficient evidence to show that Harris was the agent, servant, or employee of defendant and that defendant had control over or was responsible and liable for his acts. This, coupled with plaintiff's failure to properly prove his damages, together with other weaknesses in plaintiff's case which we do not need to discuss, left the Court no alternative other than to direct a verdict for defendant.
The judgment of the lower Court is affirmed.
KANNER, Acting Chief Judge, and SHANNON, J., concur.