KEENER and others v. UNION PAC. RY. Co.

DENVER LAND & IMP. CO. v. SAME.

(*Circuit Court, D. Colorado.* May 4, 1887.)

1. LIMITATION OF ACTIONS—SECTION 2186, GEN. ST. COLO.—RAILROAD COMPANIES —RIGHT OF WAY.

Section 2186, Gen. St. Colo., provides, *inter alia,* "that every person in the peaceable and undisputed possession of lands or tenements under claim and color of title, made in good faith, who shall for five successive years hereafter continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his or her proper title." *Held,* that this provision will protect the title of a railroad company to a right of way taken and used as an easement, upon compliance with its conditions, although the condemnation proceedings were invalid for want of sufficient notice, and the owner of the fee was not estopped, by any knowledge of the occupancy, from maintaining an action of ejectment.

2. TAXATION—RAILROAD COMPANIES—RIGHT OF WAY.

The assessment law of Colorado (Gen. St. Colo. § 2847) provides, in respect to the taxation of railroads, that the "property shall be valued at its full cash value, and assessments shall be made upon the entire railway within this state, and shall include the right of way, road-bed," etc. *Held,* that the term "right of way," as used in the statute, (Gen. St. § 2847,) does not relate to a mere intangible right of crossing, but to the strip of land appropriated by the railroad company for its use, and upon which its road-bed has been built.

On Trial to the Court. Ejectment.

*Wells, McNeal & Taylor,* for plaintiffs.

*Teller & Orahood,* for defendants.

BREWER, J. I have two cases that were argued at last term which I wish to dispose of first. One is the case of *Keener v. Union Pac. Ry. Co.* There are two actions, but the same facts appear in each. The action is one of ejectment, to recover a portion of the right of way of the defendant railroad company. The facts are these: In 1866, the quarter section over which this right of way runs was the property of Charles F. Groesclaud, a resident of this county. He conveyed it on that day to William McMurphy, of Illinois. The deed was recorded. In 1868, condemnation proceedings were instituted under the statutes of this state by the railway company. Believing these condemnation proceedings regular, it entered into possession, and has since occupied that right of way. In those proceedings an affidavit was filed that the title was in the unknown heirs of Charles F. Groesclaud, and that they were non-resident; and the only service was by publication. There were no proceedings against, and no attempt at notice to, McMurphy or his heirs, he at that time being deceased, but all the proceedings ran against the heirs of Charles F. Groesclaud, when, by the records of this county, before they were initiated, Groesclaud had parted with his title, and when, as a matter of fact, Groesclaud was living, and a resident of this county.

This action is ejectment, and the first question arises upon the claim

of the railroad company that these condemnation proceedings are proceedings *in rem*, and that, whenever instituted, the court takes possession of the *res*, and therefore its judgment of condemnation, is not subject to collateral attack, it is a finality, except as reversed for error. It is perhaps true that these condemnation proceedings are at least *quasi in rem*, and it may be true, as counsel claim, that, by virtue of the state's inherent power of eminent domain, it may seize and appropriate property of the individual without notice.

Conceding that to be true,—that the state has this sovereign power, by which it can reach out its potent hand and grasp the property of any individual, and appropriate it to public purposes without notice to him,—yet the legislature of Colorado provided, in its condemnation act, for notice; and whenever a legislature so provides, notice is essential to the jurisdiction of the court, and a condemnation proceeding against the land of A., without notice to A., and with simply a notice to B., does not affect the title of A., or vest any title in the railroad company. So, whatever the state might do, it seems to me that, under this condemnation statute, these condemnation proceedings must be adjudged invalid.

Nor do I think there is any force in the claim of the railroad company that its occupation must be considered permitted by the owner, so as to work an estoppel against him from maintaining an action of ejectment. It is doubtless true that where the owner is cognizant of the fact that the railroad company enters and makes improvements, (and that principle obtains, not merely in respect to railroad companies, but in respect to all parties,) where the owner of the land is cognizant of the fact that another party is entering upon his property and improving it, spending money thereon, and makes no objection thereto, that may work against him an estoppel to thereafter challenge the rightfulness of that occupation. But the testimony here fails to show any knowledge on the part of the then owners. McMurphy himself, in his life-time, was a resident of the state of Illinois. After his death his widow and children continued to reside there, and there is not the first *scintilla* of testimony to show that they had any knowledge of the occupancy of this tract by the railroad company; and under these circumstances, where there is no knowledge, there can be no estoppel.

A further question, of the several that were discussed by counsel, arises under your statute of limitations, coupled with payment of taxes. It is agreed that the railroad company has been in occupation from 1868 to the present time, undisturbed by any one, its occupation unchallenged until the commencement of these suits; it is agreed that the railroad company has paid all its taxes for the period of five successive years; and it is insisted that section 2186 operates to protect its possession and establish its title. That section, stripping it of matters which have no pertinency to this case, reads thus:

"That every person in the peaceable and undisputed possession of lands or tenements under claim and color of title, made in good faith, who shall for five successive years hereafter continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements,

shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his or her proper title."

Upon that the railroad company rests, saying that for more than these five successive years it has paid taxes upon this land,—this right of way; that it entered into possession under claim and color of title; and that that entry was made in good faith.

Your assessment law provides in respect to the taxation of railroads:

"The said property shall be valued at its full cash value, and assessments shall be made upon the entire railway within this state, and shall include the right of way, road-bed, bridges, culverts, rolling stock," etc.

The term "right of way" has a twofold significance. It sometimes is used to mean the mere intangible right to cross; a right of crossing; a right of way. It is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its road-bed. Obviously, the term in the statute in this case has the latter significance, and taxation is to be upon that strip, assessed at its full cash value, which the railroad company has appropriated and is using as its right of way, and upon which, to its entire width, it may place its tracks and side tracks; therefore, by the very terms of the statute, this right of way,—this strip,—thus occupied by the railroad company for now 18 years, has been taxed to the railroad company, and these taxes have been paid by it. It entered upon that strip under claim and color of title, by virtue of legal proceedings initiated in the proper court. Defective and invalid though they were, yet it entered under the claim that those legal proceedings vested a legal estate to that right of way in the railroad company; and there is nothing in the testimony to indicate that that entry was not made in the utmost good faith, or that the mistake—and it was probably but a mistake—in the affidavit for service as to the name of the owner was not such a mistake as might readily occur in the hurry and rush of business in the condemnation of a long right of way. There is nothing in the case from which the court can say that these proceedings were in bad faith, and without an intent to notify the real owner, or with a thought of obtaining possession of the land otherwise than upon legal proceedings, and upon the payment of proper compensation. Beyond any question, it must be adjudged that that entry and occupation was made, eighteen years ago, under claim and color of title, and in good faith; and it is admitted that the railroad company has paid these taxes for the five successive years.

But it is urged that the statute only applies where a legal title is taken to land,—where a fee is claimed; and that it does not apply to the case of an easement,—a right of way. Well, your statute at the time these condemnation proceedings were had, authorized the appropriation of the fee or the use. I think it must be conceded, however, that, unless the proceedings affirmatively show that the fee is sought to be taken, nothing is taken but that which is needed, and that is the use. The record of those proceedings is not entirely clear, but I think the fair construction to put upon it is that the railroad company was seeking to take no more than it needed, and that was the easement,—the use. But is this statute

limited to cases where the fee is claimed? The language seems to me to indicate the contrary. It says, "shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his or her proper title." "To the extent"—in other words, I take it, the implication, the fair construction of that language, is that whoever is in possession of lands claiming a title, full or not,—a title supported by some written document or under some legal color and claim of title,—who pays the taxes assessed upon that property, is, to the extent of that claim, protected. For instance, if one claims to have the leasehold interest of a tract of land for a period of ninety-nine years, making no claim to the fee, and possessing that land for five years, should pay the taxes assessed upon it, this statute protects that title to the extent of that claim; that is, to the extent of his claim of a leasehold interest for ninety-nine years. And so, where a railroad company occupies land under a claim of title to the right of way for a term of years or in perpetuity, and pays the taxes upon that right of way for five successive years, this statute, working beneficently, affirms that that title is protected, not to the fee, because the fee is not claimed, but to the use which is claimed, and under color of right to which the possession was taken.

No authorities have been cited that are directly in point,—counsel concede they have been able to find none,—and it comes simply to a construction of this statute; and while there are difficulties on both sides, it is in harmony with what I think is the beneficent spirit of all statutes of limitation, to protect a party who in good faith enters upon and improves land, and for a series of years pays all the charges thereon which the state imposes, to say that it is applicable to a case like this.

My conclusion, therefore, is that the defendant is protected by the statute of limitations and the payment of taxes; and judgment will be entered in its favor.