## GLADYS CITY OIL, GAS & MANUFACTURING CO. et al. v. RIGHT OF WAY OIL CO. et al. †

(Court of Civil Appeals of Texas. April 13, 1911. On Motion for Rehearing, May 4, 1911.)

1. MINES AND MINERALS (§ 48*)—WHAT ARE "MINERALS."

Minerals embracing both surface and subsurface minerals include every constituent of the earth's crust (citing 5 Words & Phrases).

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 134; Dec. Dig. § 48.*]

2. RAILROADS (§ 69*)—RIGHT OF WAY DEED—CONSTRUCTION.

Deeds should be construed to effect the plain intention of the grantor, and, if that intention is plain, it controls, regardless of inconsistent or repugnant clauses which are to be reconciled by the intent deduced from the entire instrument; and hence where a grantor, in consideration of advantages that would accrue by the construction of a railroad over his land, conveyed a right of way to a railroad company for the purpose of constructing, operating, and maintaining its railroad upon his land, together with the right to take and use all the timber, earth, stone, and mineral existing or that might be found within the right of way, it was obviously the intention of the grantor to convey the railroad nothing but an easement, and this grant was not enlarged by the right to take all the earth, timber, stone, and mineral existing in the right of way, as that right would be utterly inconsistent with the substantial purpose of the deed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 161–165; Dec. Dig. § 69.*]

3. RAILROADS (§ 69*)—RIGHT OF WAY DEED—CONSTRUCTION—"EJUSDEM GENERIS."

Where one granted a right of way to a railroad over certain land, together with the right to take and use all the timber, earth, stone, and mineral existing or to be found within the right of way granted, the right to take the minerals must, under the principle of ejusdem generis, which limits general terms by particular preceding terms, be confined to surface minerals, as the grantor in referring to timber

and stone had limited his grant to surface mineral (citing 3 Words and Phrases).

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 161–165; Dec. Dig. § 69.*]

4. RAILROADS (§ 69*) — CONSTRUCTION—CONVEYANCE FOR "RIGHT OF WAY"—INTEREST CREATED.

The words "right of way" may mean the ordinary easements railroads have to use land over which to run their trains or the mere intangible right to cross another's land, and, though the use of that term in a conveyance to a railroad company will not, if the other parts of the conveyance indicate an intention to convey a greater estate, prevent a greater estate from being conveyed, yet, where the purpose of the deed is obviously to convey a mere right of way, the addition to the deed of the words "together with the right to take all stone, timber and minerals" does not increase the extent of the grant, but the deed must be construed as granting a mere easement, being limited by the term "right of way," and not giving the railroad company the right to bore for oil or prospect for other minerals in the right of way (citing 7 Words and Phrases).

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 161–165; Dec. Dig. § 69.*]

5. RAILROADS (§ 67*)—RIGHT OF WAY DEED—CONSTRUCTION AGAINST PARTY DRAFTING DEED.

Where a railroad company prepares right of way deeds, which are thus signed by grantors, they are to be most strictly construed against the grantee, instead of the grantor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 153–158; Dec. Dig. § 67.*]

6. TRESPASS TO TRY TITLE (§ 41*) — SUFFICIENCY OF EVIDENCE.

The mere fact that the owners of the fee in land, the title to which was in controversy, and over which a railroad company had a right of way, made no move to enjoin the railroad company from boring an oil well on the right of way, which turned out to be a nonproducer, did not show that the owners acquiesced in the railroad's claims to take oil from the right of way.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

7. TRESPASS TO TRY TITLE (§ 41*)—FINDINGS—EVIDENCE—SUFFICIENCY.

In trespass to try title to establish the right to the ownership of the fee under a railroad right of way, the mere fact that the plaintiff in other litigation reserved his rights to all of the minerals under the right of way does not impeach a finding that he had made no claim of dominion over or upon the right of way up to the time of suit.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

8. APPEAL AND ERROR (§ 219*) — REVIEW—FINDINGS OF FACT.

Where the trial court files conclusions of fact and others are desired, there must be a specific request for findings upon these points, or the omissions in the court's conclusion cannot be relied upon on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1315–1324; Dec. Dig. § 219.*]

9. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—UNCONTESTED PROPOSITIONS.

Under rule 41 (67 S. W. xvii), providing that, when any statement subjoined to a proposition under an assignment by plaintiff in error or appellant is not contested, it will be construed as acquiesced in, a statement by the ap-

pellants that the undisputed evidence establishes certain facts must be accepted as true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

10. APPEAL AND ERROR (§ 882*)—INVITED ERROR.

One requesting the trial court to hear evidence and determine a question not in issue under the pleadings cannot object that the trial court complied with his request.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

11. RAILROADS (§ 69*) — TITLE — RIGHT OF WAY.

The fact that a railroad, which had only an easement to a right of way over land, authorized another company to bore for oil within its right of way, will not authorize the owners of the fee to use the right of way to bore for oil, as that would oust the railroad of part of its possession.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 161–165; Dec. Dig. § 69.*]

On Motion for Rehearing.

12. APPEAL AND ERROR (§ 878*)—REVIEW—HARMLESS ERROR.

In trespass to try title to establish the ownership of the fee under a railroad right of way, one trespassing on the fee cannot object that a joint judgment was rendered in favor of the owner of the fee and his lessee, as it does not affect the trespasser's rights how the matter of title is settled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. § 878.*]

13. MINES AND MINERALS (§ 51*)—TRESPASS—TAKING OIL—MEASURE OF DAMAGES.

The measure of damages for taking oil from land through mistake as to ownership would be the value of the oil at the surface, less the reasonable cost of extracting it.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 137–141; Dec. Dig. § 51.*]

14. APPEAL AND ERROR (§ 221*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

One who through mistake took oil from the land of another cannot on appeal complain that damages for the market value of the oil were adjudged against him, where he in no way raised the question as to the proper measure of damages in the court below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1353–1368; Dec. Dig. § 221.*]

Appeal from District Court, Jefferson County; W. H. Pope, Judge.

Action by the Gladys City Oil, Gas & Manufacturing Company and others against the Right of Way Oil Company and others. From a judgment for defendants, plaintiffs appeal. Reversed and rendered.

D. Edward Greer, Chenault O'Brien, and Geo. Chilton, for appellants. W. D. Gordon, Oswald S. Parker, Parker, Orgain & Butler, and Baker, Botts, Parker & Garwood, for appellees.

REESE, J. This is an appeal from a judgment of the district court of Jefferson county, in favor of defendants, in a suit by the Gladys City Oil, Gas & Manufacturing Com-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

pany and the J. M. Guffey Petroleum Company against the Right of Way Oil Company, the Texas & New Orleans Railway Company, the Gulf Pipe Line Company, and Oswald Parker, trustee.

We copy from appellants' brief the following statement of the issues as presented by the pleadings of the respective parties:

This is a suit for the possession of a tract of land, part of the John A. Veatch survey in Jefferson county, Tex., and for the title and possession of all oil produced therefrom, and for an injunction restraining the defendants from drilling oil wells on the land, and taking oil therefrom, and from asserting any right or claim thereto. The plaintiff alleged: That the Veatch survey was granted to John A. Veatch in 1835. That he died, leaving certain parties as his heirs (six in number), and that by mesne conveyance all of the title to that part of the survey embracing the land in controversy became vested in the plaintiff the Gladys City Oil, Gas & Manufacturing Company prior to September 18, 1900. That on that date the said company made a lease to the assignor of plaintiff the J. M. Guffey Petroleum Company, giving it exclusive right to take possession of the said land, drill oil wells thereon, and extract the oil therefrom, and that soon thereafter the said company did take possession of the said land, drilled wells and found oil in great quantities, and has been ever since in possession of the said land, producing oil therefrom. That the oil underlying the land is situated at a depth of from 1,000 to 1,500 feet, and the only way the oil can be reached and extracted is by sinking wells to such a depth, casing up the holes with iron pipe and pumping the oil through such wells. That the producing of oil is a large and separate business, entirely distinct from any business in which a railroad ever engages. That the Texas & New Orleans Railway Company has a line of track which it operates running through the leased premises, and is the successor in interest to the East Texas Railway and the Sabine & East Texas Railway Company, the said railroad track having been built many years before the plaintiff acquired any interest in the land. That there was granted by some of the part owners to the Sabine & East Texas Railway Company a right of way over and across the said survey so far as such grantors had title, to wit: That S. H. Veatch, one of the six heirs of John A. Veatch, in July, 1881, made a deed purporting to grant a right of way across the said tract of land 200 feet in width, a copy of which instrument was attached to plaintiffs' petition as "Exhibit A." That in February, 1891, Geo. W. O'Brien and Emma E. John made a right of way deed to the said railroad company over a strip of 100 feet in width, and about the same date W. C. Averill and P. S. Watts made a similar deed, copies of both of said instruments being attached as exhibits to the petition.

At the time the last-mentioned deeds were made, O'Brien and John owned a half interest and Watts and Averill owned four-fifths of a half interest in the survey. That by reason of these deeds the said railroad company has acquired an easement in a right of way over the land, but no other interest, and has no right to take any minerals except such solid minerals on the surface as may be suitable for the construction and maintenance of the railroad. About 1892 the Gladys City Oil, Gas & Manufacturing Company had this land surveyed out and platted, laying the same out in blocks approximately 300 feet square, leaving streets in such parts of this land as were included in Gladys City proper, and laying out the balance of the land in farm lots of from 10 to 40 acres each. That prior to this the railway company had taken possession of a strip 200 feet in width, or 100 feet distant from its track where the land in controversy is located, and that the said company, when it made the survey, respected the possession and claim of the railway that it had for the purposes of a right of way an easement to the strip lying southeast of the northwest corner of block 45 and made its survey and plat accordingly; that is, it left unsurveyed and unplatted the 200-foot strip, and laid off its blocks with the property line 150 feet from the center of the railway, this leaving a street between the strip claimed by the railway as a right of way and the property line 50 feet in width. That the defendant Right of Way Oil Company, acting under a lease from the Texas & New Orleans Railway Company, and having no other title, just prior to the filing of this suit, had entered upon a part of the land embraced in the lease and on the right of way of the railway company, acquired as before stated, and drilled a well thereon that produced a considerable quantity of petroleum oil which had been delivered to the defendant Gulf Pipe Line Company, and sold to it, stating the amount of oil and the amount of money. The particular part of the right of way alleged to have been trespassed upon was described by field notes. The petition set out the exact location of the wells, and showed that, if the railroad company had a right of way of 200 feet in width, the well would be on the right of way; otherwise it would be off the same. The petition also showed that before the well was drilled the plaintiff Guffey Petroleum Company notified the Right of Way Oil Company that, if it drilled any well, it would do so at its peril; that the Guffey Petroleum Company claimed the land and the exclusive right to produce oil therefrom.

The prayer was for judgment establishing title in plaintiffs to the land described as the land trespassed upon by the defendants, and the exclusive right of the Guffey Company to drill on the said land and extract oil therefrom; and also establishing the title of the plaintiffs to the well and all oil

produced therefrom; also, an injunction on final hearing restraining defendants from drilling any other wells on the land or setting up any claim thereto. All of the defendants answered jointly, first, by a general demurrer; second, by a plea of not guilty; third, by plea of the statute of limitation of three, five and ten years; and, fourth, specifically that, at the time the deed was executed by S. H. Veatch in 1881, he was claiming to own the whole survey in common tenancy with the other heirs of his father, John A. Veatch; that his undivided interest amounted to several hundred acres; that the said survey was all the same kind of land and all parts of it were at the time of equal value; that S. H. Veatch lived in Sabine county, Tex., and that all the other heirs lived in California, and at the time he was the general agent and representative of the other heirs, looking after their landed interests in Texas, and holding power of attorney from two of them; that he had acted as their agent in selling other lands, and they had always ratified what he did; that in making the deed he was acting for all of the heirs and each of them receiving the benefit of building the railroad and acquiesced in and ratified his act in making the deed to the railroad company.

It is further averred that Geo. W. O'Brien was the organizer and principal owner of the Gladys City Oil, Gas & Manufacturing Company; that he was the attorney for the Veatch heirs in the litigation involving title to the said land; and that the said O'Brien and others acquired all the title from the said Veatch heirs, including S. H. Veatch, about 1891, and that this title passed to the plaintiffs; that at the time of the execution of the deeds by O'Brien and Averill to the railroad company O'Brien was the duly authorized attorney representing the Sabine & East Texas Railway Company in all of its legal matters in this section of Texas, and Averill was its vice president. The Gulf Pipe Line Company answered that the Right of Way Oil Company had run a stated quantity of oil into its lines from the land in controversy, and that it had bought the oil, paying the Right of Way Oil Company therefor, but had taken a bond with the Fidelity & Deposit Company of Maryland as security to indemnify it against loss or damage in case the Right of Way Oil Company had no title. It asked for judgment over against the Right of Way Oil Company for the amount of money it had paid the said company in case the plaintiffs recover judgment against it.

The plaintiffs filed a first supplemental petition in answer to the answer of the defendants, containing: First. Special exceptions to that part of the answer claiming an estoppel. Second. Setting up that the defendants were themselves estopped from claiming that the railway company owned more than 100 feet in width across the survey by reason of the fact that, after taking the deed from S. H. Veatch in 1881 for a right of way 200 feet in width, the railroad company in 1891 procured and accepted deeds from Watts and Averill and O'Brien and John for a right of way only 100 feet in width; that they were further estopped from claiming that they owned the entirety of the minerals under the right of way because in the deeds taken in 1891 from Watts and Averill and O'Brien and John no right to use any minerals except earth and stone was granted. This we supplement as follows: Defendants pleaded, with full statement of the facts upon which they based such defense, estoppel and acquiescence on the part of plaintiff in the right and ownership of defendants in a right of way 200 feet wide across the Veatch survey, with the right to take the oil from the land. They also attached as an exhibit to their answer a copy of the deed from S. H. Veatch to the East Texas Railway Company, under whom defendants claim, and which is hereafter fully set out. Plaintiffs in their petition prayed the court "to hear evidence and determine the extent of the right of way owned by the Texas & New Orleans Railway Company across the Veatch survey; that is, the width and extent thereof, and that as to such right of way the railway company has no right to drill wells and take oil below the surface."

A jury was waived and trial was had before the court, and resulted in a judgment that the plaintiffs take nothing by their suit and that the defendants, including the Gulf Pipe Line Company, "go hence without day"; that the pipe line company take nothing by its cross-bill; that the defendants be quieted in their title and right of possession to a strip of land 200 feet in width across the entire Veatch survey, and that the plaintiffs had no title or interest in any minerals underlying said land or extracted therefrom. From the judgment the plaintiffs prosecute this appeal. The trial court prepared and filed conclusions of fact and law, which are incorporated in the record.

We adopt the following conclusions of fact of the trial court, which are not objected to, nor attacked by appellant, or the objections to which we do not consider well taken:

"(1) All parties to this suit claim title through and under the heirs of John A. Veatch, the original grantee.

"(2) On the 29th day of July, 1881, S. H. Veatch, one of the six heirs of the original grantee, owning an undivided one-sixth interest in over 3,000 acres of the Veatch survey, made the deed set out in full in the plaintiffs' petition as an exhibit, and which is here copied in full: 'State of Texas, Sabine County. Know all men by these presents that I, being the owner in fee of the following described tract of land lying in Jefferson county, Texas, to wit, an equal

undivided one-third of a tract of land containing 19,481,003 square varas, originally granted and titled by the government of Mexico to John A. Veatch, as a colonist of Zavalla's colony, near a place called Sour Springs in said county, and lying between the J. W. Bullock and Pelham Humpries leagues surveys, except 177 acres in the N. W. corner of said Veatch survey, heretofore conveyed by my father, John A. Veatch, for the consideration of one dollar to me in hand paid and the further consideration of the benefits and advantages that will accrue to me by the construction of a railway over said tract of land, have and do hereby sell, grant and convey unto the East Texas Railway Company, for the purpose of constructing, operating and maintaining its railroad, the right of way 200 feet in width over and upon the above described tract of land, together with the right to take and use all the timber, earth, stone and mineral existing or that may be found within the right of way hereby granted, to have and to hold to said East Texas Railway Company and its successors, so long as the same or any part thereof may be occupied and used for the purpose of constructing, operating or maintaining its said railway. In witness whereof I hereby sign my name the 29th day of July, 1881.' This deed was duly acknowledged and recorded in Jefferson county August 19, 1881. The grantee in that deed, the East Texas Railway Company, was succeeded in due form by the present defendant Texas & New Orleans Railroad Company, and the Right of Way Oil Company holds a lease giving it the right to develop the oil rights on said right of way under the said railway company.

"(3) At the time S. H. Veatch made the deed in question, he was the only one of the heirs living in Texas, and was the duly constituted agent and representative under written power of attorney of his sister, Fannie Veatch, and of his brother J. J. Veatch, and was the informal representative looking generally after the Veatch heirs' landed interest in Texas of the other Veatch heirs, all of whom lived in California. He was also the administrator of the estate of John A. Veatch, deceased, appointed and acting by and under the authority of Sabine county probate court of Sabine county, Tex., although there is no evidence that he was acting in any official capacity in making the deed in question.

"(4) At the time he made said deed conveying to the East Texas Railway Company the 200 foot right of way through the Veatch survey, he himself owned many times that amount in acreage in his own right and the land conveyed to and used by the railway company was average in value per acre with the balance of the survey, all of which was open, practically level, prairie land. * * *

"(6) At the time of and previous to the procurement of the said Veatch deed, Capt. Geo.

W. O'Brien was the attorney for Kountze Bros., the promoters of the original railway company, regarding said matter, and continued up to the year 1900 to represent said railway company as local attorney at Beaumont. Capt. O'Brien died about May, 1909.

"(7) At the time said deed was made by S. H. Veatch the land in controversy—that is, what is known as Spindle Top—was generally known and regarded as prospective oil land. It had been so known for many years prior to that time, and had been the subject of much speculation and conversation as prospective oil and mineral land, there being on the land and near where said railway company line is located mineral springs, surface indications, such as the bubbling of natural gas, etc., indicative of what was then regarded as oil deposits. There was no timber or stone on the surface. * * *

"(9) Soon after said right of way deed was obtained from S. H. Veatch, the said S. H. Veatch entered into a contract with Geo. W. O'Brien and A. S. John, under the firm name of O'Brien & John, purporting to act for himself and the other Veatch heirs, for the recovery by them as attorneys of said land from certain other adversary claimants, and for the clearing up of the Veatch title to said land, agreeing to give them one-half for their services.

"(10) A suit was instituted and judgment was obtained for said land, except 500 acres in the southeast portion of the survey, not adjacent to said railway, which was conceded to adversary claimants in compromise. Therefore the other Veatch heirs who had not formerly empowered by writing S. H. Veatch to make said contract with O'Brien & John recognized and adopted the same as binding upon them, and about the year 1891 all the title remaining in said heirs after the conveyance to the said O'Brien & John of the said one-half interest was conveyed by their deeds to the said O'Brien and then widow of A. S. John, W. C. Averill, P. S. Watts, and J. F. Lanier, the last three named having purchased from some of the heirs, and the former having purchased from the remainder.

"(11) About the year 1892 the plaintiff Gladys City Oil, Gas & Manufacturing Company was organized for the purpose of exploiting said land for oil and gas; the moving spirit and principal owner thereof being the said Capt. O'Brien, who remained the president of the company from its organization until his death.

"(12) Soon after its organization, a portion of said survey on either side of said railway right of way was subdivided into lots and blocks in the form of a town site, called the Gladys City Subdivision of said survey. In surveying out and platting said town site and subdivision the said Gladys City Oil, Gas & Manufacturing Company respected the said railway company's right

of way 200 feet wide and indicated the same on its map and plat and map of said subdivision, and recognized the appropriation of 200 feet claimed by the railway company through and under said Veatch deed.

"(13) There was never any other division or partition of said survey between said oil and gas company and said railway company except the actual appropriation by the railway company of said 200-foot strip and acts in ratification thereof by the said oil and gas company, which never at any time questioned the right of the said railway company to said right of way.

"(14) After repeated efforts to find oil on said land, said Gladys City Oil, Gas & Manufacturing Company finally in 1900 gave a lease to A. F. Lucas to all of said survey owned by it, giving him the exclusive right, on a royalty basis, to exploit said land, develop it for oil for a period of 20 years. Lucas brought in an oil well which proved a portion of said land as oil bearing in the year 1901. He then assigned his rights to the present plaintiff, J. M. Guffey Petroleum Company, and the section of said land lying east of said railway right of way has been since then developed as an oil field. * * *

"(17) The Right of Way Oil Company, holding a lease from the Texas & New Orleans Railway Company, through Oswald S. Parker, trustee, its immediate lessor, about November, 1909, drilled a well on said right of way as alleged in the plaintiffs' petition, obtained oil and equipped the same and has since operated it under pump, producing a production up to the time of the trial of this cause of 7,569.54 barrels of oil of the value of 80 cents per barrel, which oil it has run to the Gulf Pipe Line Company and sold to it at 80 cents per barrel. The proceeds thereof have been paid over to the Right of Way Oil Company by the said pipe line company upon the giving of an indemnity bond against this suit.

"(18) The J. M. Guffey Petroleum Company served written notices by registered mail on the officers of the Right of Way Oil Company as soon as said well was started to be drilled, that they claimed the oil and mineral rights on said right of way and protested against the action of the Right of Way Oil Company in drilling said well, but the protest was not heeded by the Right of Way Oil Company."

In addition to these conclusions of the trial court, which we have adopted, we find the following:

The plaintiff Gladys City Company held under deeds from heirs of John A. Veatch the title to all of the land of the Veatch survey, except certain portions not necessary to refer to, and except whatever interest the railroad company acquired under the right of way deeds of S. H. Veatch and others referred to. The railway company has claimed since building its road, and used the same for railway purposes, a right of way 200 feet wide through that part of the land laid off

as Gladys City, which includes that part of its right of way on which the well in question is located, and this claim has been acquiesced in by plaintiffs. It does not appear that it has claimed more than 100 feet right of way over that portion of the survey lying north of the Gladys City tract. The right of way is marked by T-rails set in the ground at intervals. These rails along the line of the right of way through Gladys City tract are placed 100 feet from the center of the track, and north of this tract 50 feet from the center of the track, on each side of the railroad. When the Gladys City Company acquired title, it laid off that part known as Gladys City into lots, blocks, and streets, respecting the railroad's claim to a right of way 200 feet wide, but that part of the land lying north of the Gladys City tract was laid off into farm lots, the lines of which were laid off to within 50 feet of the center of the railroad track, leaving a right of way 100 feet in width. This right of way has been continuously since used by the railroad company as and for railway purposes, the present line being a part of a trunk line from Sabine to Dallas, but such use has been only such as is made of a right of way easement by railroad companies.

On February 4, 1891, Geo. W. O'Brien and Emma E. John, who owned one-half of the Veatch survey, executed to the Sabine & East Texas Railway Company a deed to a right of way "equal to their interest" in a strip of land 100 feet wide over the said survey, and on February 6th W. C. Averill and P. S. Watts, who owned four-fifths of one-half interest, executed a similar deed to a right of way to their interest in a strip of 100 feet wide. These deeds were duly recorded, and delivered to the railroad company, and the evidence is sufficient to authorize the conclusion that their execution was procured by the company. Oil under the land is found at a depth of from 800 to 1,000 feet, and it costs $4,000 to $4,500 to drill and equip a well similar to that of the Right of Way Oil Company. At the time S. H. Veatch executed the deed referred to he owned an undivided one-sixth interest in the Veatch survey of about 3,000 acres, and the land, at the time, was all of about the same market value. There has never been a partition of the land among the heirs, the interest of each having been acquired by the predecessors in title of the Gladys City Company by which they are now owned.

By the first assignment of error appellants assail the following conclusion of law of the trial court: "The deed of S. H. Veatch, made in 1881, conveyed to the grantee therein, the East Texas Railway Company, a right of way through said Veatch survey of land 200 feet in width, together with the right of the railway company to take and use all the minerals contained within, or that might be discovered upon said right of way. I construe the deed as conveying the same

right to the railway company, both as to the surface and to the minerals beneath the surface, as any ordinary absolute fee-simple conveyance could convey such rights."

Under this assignment, appellants state the following proposition: "Where the grantor in a deed, in consideration of the benefits to accrue to him by the building and operating of a railway across his land, conveys a right of way to a railway company 'for the purpose of operating and maintaining its railroad,' and such deed contains this provision, 'Together with the right to take and use all the timber, earth, stone and mineral existing, or that may be found within the right of way hereby granted,' and has habendum clause as follows: 'To have and to hold, so long as the same, or any part thereof, may be occupied for the purpose of constructing, operating or maintaining its railway'—such deed conveys only a right of way or easement over the land, and passes the right to use such surface minerals only as would be useful in constructing and maintaining the railway, and does not confer any right on the railway to mine for oil or minerals under the surface, and especially would such deed not pass any right to fluid minerals, such as oil or gas, which could not be used in constructing and maintaining a railway." We copy this proposition in full because it substantially embodies our conclusions as to the law of the case, and practically disposes of the questions involved in this appeal.

Upon the issue thus presented the entire case turns, and the parties have presented their respective contentions as to the construction of the deed of S. H. Veatch to the East Texas Railway Company, set out in the findings of fact, with great ability and with exhaustive citations of authority in support thereof. Both parties insist that the deed is unambiguous, and that there is no necessity to resort to parol evidence to explain its meaning, which is to be gathered from the terms of the deed itself, but this is about the only proposition upon which they agree, and upon this proposition the trial court agreed with them, giving to the deed the construction contended for by appellees; that is, that the deed conveyed what was in substance and effect the fee, determinable upon the happening of the contingency set out in the habendum clause, that is, when the land should cease to be "occupied and used for the purpose of constructing, operating and maintaining the said railway." If, in fact, the words "together with the right to take and use all timber, earth, stone, and mineral existing, or that may be found within the right of way hereby granted," be construed to carry with it the right to take and use all minerals, whether on or under the surface, then indeed nothing of substantial right is omitted that would be included in a general conveyance, not of a right of way only, but of a strip of land 200 feet wide across the land referred to.

137 S.W.—12

[1] The right to take and use all minerals, if it includes subsurface minerals, would include not only the right to take and use petroleum oil, but everything else coming under the definition of "minerals upon or under the surface"; that is, "any constituent of the earth's crust." Century Dictionary, title "Mineral." See, also, 5 Words & Phrases, title "Mineral." Full ownership of and title to the land could carry with it nothing more of substantial right. So, if the terms used in the deed giving the right to use all minerals are to be taken in this broad sense, the title conveyed was in substantial effect a base or determinable fee as contended by appellees. The question presented then is as to the construction to be given to the deed with special reference to the language used giving this right.

[2] It is a cardinal rule that deeds must be so construed as to effectuate, if possible, the intention of the grantor. This intention is to be gathered from the entire instrument. If the expressed meaning is plain upon the face of the instrument, it will control. Effect and meaning must be given to every part of the deed; each clause being considered separately and being governed by the intent deducible from the entire instrument, and separate parts being viewed in the light of other parts. The intent must be primarily gathered from a fair consideration of the entire instrument and the language employed therein, and should be consistent with the terms of the deed, including its scope and subject-matter. 13 Cyc. 601 et seq.; Hancock v. Butler, 21 Tex. 804; Simonton v. White, 93 Tex. 56, 53 S. W. 339, 77 Am. St. Rep. 824; Armstrong v. Lake Champlain Granite Co., 147 N. Y. 495, 42 N. E. 186, 49 Am. St. Rep. 683.

We think it would be indisputably clear that the grant in the deed "to the East Texas Railway Company, for the purpose of constructing, operating and maintaining its railroad, the right of way two hundred feet in width over and upon the above described tract of land," conveyed no more than a right of way—that is, an easement of the extent named—unless the additional words, "together with the right to take and use all the timber, earth, stone, and mineral existing or to be found within the right of way hereby granted," express an intention to convey the land itself. Indeed, the grantor seems to be careful in the language used to express nothing more than an intention to convey a right of way or easement. The language used is "the right of way over and upon" the land, and the purpose is stated to be "the constructing, operating and maintaining its railroad." It is hardly conceivable that, if the grantor had intended to convey rights so extensive as are claimed by appellees under this deed, he would have used this language, in the granting part of the deed, and sought to accomplish such purpose by merely adding to this language "together with the right to

take and use all the timber, earth, stone, and mineral," etc. It is to be further noted that the purpose of the grant, according to a proper construction of the language of the deed—that is, to construct, operate, and maintain its railroad—applies to, and limits also, this right to take and use, as well as the grant of the right of way. The right of way and the right to take and use, etc., are both "sold, granted and conveyed" for the express purpose stated of constructing, operating, and maintaining its railroad. It is altogether unreasonable to suppose that it was intended to grant anything more than a mere right of way "over and upon" the land, together with the right to take and use such timber, earth, stone, and mineral of whatever character there might be found to exist upon the surface. The right of way conveyed is certainly limited by its terms to the surface, and the right to take and use the substances named is limited to those found "within the right of way." If both parties had known that petroleum oil, which is in fact a mineral, underlay the land, if they could have, in 1881, seen so far into the future as to foresee that such oil would one day be used as fuel for locomotive engines, it is hardly conceivable that they would have used the language used in this deed to express an intention to grant to the railroad company the right to bore a well and take from 1,000 feet below the surface the oil which lay there. Such construction would also carry with it the right to take coal or iron or copper or any other substance coming within the meaning of minerals, and which might in any way be used in the construction of a railroad or the equipment and operation of its trains. If it had been intended to grant such rights, why say anything about "a right of way over and upon" the land. The right to explore for and take from below the surface oil, coal, iron, and such other minerals as might be there found at great depth, provided only they might be used for the purposes referred to, is utterly inconsistent with the substantial purpose of the grant, as expressed in the deed.

[3] We think it is also of much significance in construing this deed that the grant is made to take and use "all timber, earth and stone" in connection with minerals. These substances are found upon the surface. Earth and stone are likewise minerals, and, by adding "all minerals," it is reasonable to suppose that it was intended to go no further than to grant the right to take such other minerals as possessed this same general characteristic of surface mineral, such as might be used in construction of the railroad in the same way. This is the familiar doctrine of ejusdem generis; that is, that when a grantor in a deed or will makes use, first, of terms each evidently confined and limited to a particular class of a known species of things, and then, after such specific enumeration, subjoins a term of very extensive significa-

tion, this term, however general and comprehensive in its possible import, when thus used embraces only things "ejusdem generis" —that is, of the same kind or species with those comprehended by the preceding limited and confined terms. 3 Words & Phrases, title "Ejusdem Generis," p. 2328; Ex parte Leland, 1 Nott & McC. (S. C.) 462; Spalding v. People, 172 Ill. 49, 49 N. E. 996; Bills v. Putnam, 64 N. H. 561, 15 Atl. 138; Benton v. Benton, 63 N. H. 295, 56 Am. Rep. 512; Misch v. Russell, 136 Ill. 25, 26 N. E. 528, 12 L. R. A. 125.

[4] "The words 'right of way,' if not defined, are expressive of the very nature of the right ordinarily held by railway companies in the lands over which their roads run —a right to use the land only for railway purposes—an easement." Calcasieu Lumber Co. v. Harris, 77 Tex. 23, 13 S. W. 453. "It is true that the terms have a twofold signification. It sometimes is used to mean the mere intangible right to cross; a right of crossing; a right of way. It is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its track." Keener v. Union Pac. Ry. Co. (C. C.) 31 Fed. 128; Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843. The use of the term "right of way" will not limit the conveyance to a mere easement, if the other parts of the conveyance are sufficient, and indicate an intention, to convey a greater estate, but in such case will be considered as descriptive of the land conveyed. Nor will a clearly expressed purpose to convey the fee be limited by words expressing the purpose for which the conveyance is made. We are of the opinion, however, that there is nothing in the language of the Veatch deed to extend the meaning of the words "right of way" beyond their ordinary signification. On the contrary, such language rather emphasizes the intention to use those words to accomplish the purpose for which they are ordinarily used to convey only an easement. The provisions about the right to take minerals cannot be taken to extend the meaning of the words "right of way over and upon the land," but these latter words, it seems clear to us, must be construed as limited by the terms of the conveyance of "the right of way over and upon the land." 7 Words & Phrases, title Right of Way.

[5] We are of the opinion that there is in this deed no room for the operation of the rule that the language of a deed must be construed most strongly against the grantor. In the first place, it was shown that the deed was drawn according to a printed form prepared by the grantee, and, as thus prepared, was presented to and signed by the grantor. It is in the language not of the grantor, but of the grantee. In such case the rule should be reversed and the deed construed most strongly against the grantee, who prepared it and selected the language used. Uhl v.

Ohio Ry. Co., 51 W. Va. 106, 41 S. E. 340; Lockwood v. Railway Co., 103 Fed. 243, 43 C. C. A. 202. In the second place, this rule is subservient to the ascertained intention of the parties, and is not to be applied or invoked until all other rules of construction fail. 13 Cyc. pp. 609, 610. The rule cannot be of any benefit to appellees in the construction of this deed. Our conclusion is that the deed conveyed only a right of way or easement "over and upon" the land, and that the right to take and use mineral which existed or might be found within the right of way did not include the right to sink wells and take the oil under the same. That the grant of a right of way merely did not carry this right is we think too well established to be questioned. District of Columbia v. Robinson, 180 U. S. 92, 21 Sup. Ct. 283, 45 L. Ed. 440; Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295; O'Neal v. City of Sherman, 77 Tex. 182, 14 S. W. 31, 19 Am. St. Rep. 743; Calcasieu Lumber Company v. Harris, 77 Tex. 22, 13 S. W. 453; Muhle v. Railway Co., 86 Tex. 459, 25 S. W. 607; Couch v. Railway Co., 99 Tex. 468, 90 S. W. 860; Clutter v. Davis, 25 Tex. Civ. App. 532, 62 S. W. 1107; Uhl v. Railway Co., 51 W. Va. 106, 41 S. E. 341; Lockwood v. Railway Co., 103 Fed. 243, 43 C. C. A. 202; Vermilyea v. Railroad Co., 66 Iowa, 606, 24 N. W. 234, 55 Am. Rep. 279; Railroad Co. v. Karthaus, 150 Ala. 633, 43 South. 791; Smith v. Holloway, 124 Ind. 329, 24 N. E. 886; 2 Elliott on Railroads (2d Ed.) § 938.

As to the extent of the right of way to which the railway company is entitled, we are of the opinion that by the long acquiescence of the Gladys City Company in the claim of the railway company, and the express concession of appellees in their petition, such right of way through the Gladys City tract is to the extent of 100 feet in width from the center of the railway track on each side, or 200 feet in width. The claim of the railway company to this extent is not disputed. There has been no such acquiescence as to the 200 feet north of the Gladys City tract, and, as to this part of their line, the railway company does not seem to have asserted any claim except to a right of way 100 feet wide, which is the extent of the right of way granted by the deeds of O'Brien and others. Neither by estoppel nor limitation have appellees acquired a right to a right of way of greater extent on this part of their line. This renders it unnecessary to decide several interesting questions presented as to the rights of appellees under the deed of Veatch, who, in fact, only owned an undivided one-sixth interest in the land, if it had been held that such deed conveyed also the right to take the oil, as to which right there had been no acquiescence, estoppel nor limitation.

The third assignment is unimportant and immaterial in view of our holding under the first assignment of error, as is also the fourth assignment.

As indicated by our findings of fact, we are of the opinion that the court erred in its finding of fact as set out in the fifth assignment of error, "that the railway company entered upon the Veatch survey and laid out its right of way 200 feet wide, and has in connection with its successor, the present railway company, continuously since that time used said land as and for railway purposes." This finding would indicate that the railway company laid out and has since used and occupied 200 feet across the entire survey as a right of way. We can find no evidence to authorize this finding as to the laying out and occupying of a right of way 200 feet wide except through the Gladys City tract, or that part laid off into lots, blocks, and streets. As to the remainder of the land, a right of way of only 100 feet was so laid off and occupied, as shown by our fact conclusions.

In the view we have taken as to the proper construction of the right of way deed, the finding of fact complained of by the sixth assignment of error, that "at the time the deed from S. H. Veatch to the East Texas Railway Company was executed the land covered thereby was regarded as being probably underlaid with oil and gas and that the Sour Springs mentioned in the deed were well known to both parties to the deed as prospective mineral land, and as indicating the presence of oil and gas," etc., was immaterial. While there was some evidence introduced tending to show that at this time the land was regarded as probably underlaid with oil, this fact was considered immaterial by the trial court, who, after some of this evidence had been introduced without objection, excluded much more of it offered by appellee on objection of appellants as immaterial. What was introduced is sufficient probably to authorize the conclusion that the land was regarded as probably underlaid with oil and gas, as found by the court in the seventh conclusion of fact, not objected to, but we do not think that the evidence is sufficient to authorize the conclusion that this was known to S. H. Veatch at the time of the execution of the deed. We approve, and hereby adopt, the conclusions embraced in the eighth paragraph of the court's conclusions of fact, except that portion thereof which finds that S. H. Veatch knew, at the time he executed the deed, that the land was probably oil land. This, however, we do not think material.

With regard to the seventh assignment of error, we think the trial court erred in so much of its tenth finding of fact as finds that "there was no evidence as to any other official of the railway company taking over or procuring, or even having knowledge of the execution of the deeds for the 100-foot right of way. These deeds were procured by Geo. W. O'Brien, attorney of the railway company, were delivered to it and kept and produced upon the trial of this case by it.

This not only tends to show, but unexplained or uncontradicted conclusively shows, that the deeds were taken for the benefit of the railway company, and with its knowledge and by its procurement. With this exception the conclusions of the court in its tenth finding of fact are adopted by us.

[6] With regard to the eighth assignment of error complaining of the finding of the court in its fifteenth finding of fact, "that during the year 1901 the railway company drilled a well in search for oil on its right of way on said Veatch survey," we are inclined to think that this finding is not supported by the evidence. The evidence tends to show that this well was in fact on the Douthitt survey, which, it seems to have been claimed, was in conflict with the Veatch. At any rate, it could not be concluded from the fact that appellants made no move to enjoin or prevent the boring of this well, which turned out to be a nonproducer, that appellants acquiesced thereby, in the claim of appellees to the oil under the 200 foot right of way across the Veatch survey under the deed from S. H. Veatch.

[7] By their ninth assignment of error appellants complain of that part of the fifteenth finding of the trial court that "neither the plaintiff, Gladys City Company, nor the Guffey Company, ever claimed any right of dominion over or upon the right of way up to about the time this suit was filed." As ground for their complaint, it is urged, in the assignment, that the evidence showed that in 1904, in making a settlement with the Howell-Trench claimants, both the Gladys City Company and the Guffey Company did claim and assert a right to the oil underlying said right of way. This seems to be a fact, as in the deeds executed in carrying out the settlement referred to it was expressly stipulated that the Gladys City Company did not part with any of its rights to the minerals under the right of way, and that the same mineral rights were reserved in the agreed decree in the federal court in 1904, but this does not impeach the court's finding objected to, which refers to nonclaim of any right of dominion "over or upon" the right of way. The objection thus made to the finding in paragraph 15 of the court's conclusions of fact must therefore be overruled.

The objection to the finding in the sixteenth conclusion of fact that, "in the settlement of what is known as the Trench-Howell litigation, the parties, claiming adversely to the Veatch heirs and their title, were awarded certain small portions of the land, some of which was laid off abutting said 200 foot right of way; that in the settlement the Gladys City Oil, Gas & Manufacturing Company and the J. M. Guffey Petroleum Company recognized the claim of the railway company to its 200-foot right of way by calling for the same in the conveyances made by them to the adversary claimants of the portion of said land abutting on said right of way"—is technically sound, in that in the deeds referred to the tracts conveyed are described as running to within 150 feet of the railroad track, instead of to the right of way. But the finding is substantially correct, as this point, 150 feet from the railroad track, would bring the tracts conveyed to the line of a 50-foot street laid off by the Gladys City Company between their property line and the line of the right of way extending 100 feet on each side of the center of the track. The finding is thus substantially correct, and the objection is overruled.

[8] The eleventh assignment of error, which complains of omissions to find certain facts, cannot be sustained. It is believed to be the rule that where the trial court files conclusions of fact, if any further findings than those embraced in the conclusions are desired, the proper course is to request specific findings upon such points, in the absence of which the mere omission thereof in the court's conclusions cannot generally be availed of on appeal.

[9] Appellants requested the court to make certain specific findings of fact, which request was refused, and to the ruling appellants took a bill of exceptions, and the point is presented by the twelfth assignment of error. It is contended by appellants, and the contention is supported by the statement subjoined to the proposition, that the facts thus requested to be found by the court are established by the undisputed evidence. In the various briefs, arguments, supplemental briefs, etc., of appellees, we have not been able to find any specific answer to this assignment, or any attempt to deny the truth of the statement, made as to the evidence of the facts embraced in the requested findings. In this state of the record, we would be authorized, if not required, under rule 41 (67 S. W. xvii), to accept these statements as true. So much of such findings as are not substantially embraced in other findings of the trial court and as should have been so embraced we have embraced in our conclusions of fact. The most material of such findings is that appellee has claimed from the north line of the Gladys City tract up to the north line of the Veatch survey a right of way only 100 feet in width. We cannot find any sufficient evidence to support the statement embraced in the court's fifth finding of fact, "that the railroad company entered upon the Veatch survey and laid out its right of way 200 feet wide and in connection with its successor, the present railway company, continuously used the said land as and for railway purposes," if by this is meant a continuous use and claim of the 200 feet. Veatch had only an undivided one-sixth interest in the land out of which the right of way was conveyed in 1881. In 1891, the attorney for the railway company took from parties who had succeeded to the title of all of the Veatch heirs, including S.

H. Veatch, deeds for a right of way over the Veatch survey 100 feet in width, and they do not seem ever to have asserted a claim to more than the 100 feet thus conveyed, except over that part of the land included in the Gladys City tract, and as to this appellants do not contest and have acquiesced in the claim to a 200-foot right of way. They laid out the lots in Gladys City proper with reference to this right of way, but from the north line of Gladys City proper they laid off the land owned by them into farm lots only allowing for a right of way 100 feet wide. We do not understand that they contend here that appellees have not an easement or right of way 200 feet wide over that part of the land shown by the map to have been laid off into town lots, as Gladys City, and 100 feet wide north of that, and it seems to us that that is all appellees are entitled to under the practically undisputed evidence. The trial court found that the railway company, appellee, was entitled to a right of way 200 feet wide over the entire survey.

[10] While the court was requested by appellant to hear evidence and determine the extent of the right of way over the entire survey, and they cannot complain, as they do in the thirteenth assignment, that the court did so, on the ground that the pleadings did not authorize it, still we think the court was in error in finding that the railway company had a right of way of more than 100 feet in width over that part of the Veatch survey north of the Gladys City tract.

[11] This disposes of all of the assignments of error, but there is another question presented which has not been passed on. It is claimed by appellants in their petition, and by their briefs, that they are entitled to go upon the right of way and drill for and take oil within the right of way. To this we cannot agree. It is contended that the fact that the railway company has granted this right to an independent corporation, the Right of Way Oil Company, having no connection with the railway company, it cannot say that it would interfere with the operation of its business as a railway company for appellants to do the same thing. It is an answer to this, we think, that the voluntary grant by the railway company of the right of another to occupy a part of its right of way to the exclusion of the railway company cannot justify the occupation of any part of the right of way against the will of the railway company. It would depend at last upon whether such enforced occupation by appellants now would be an infringement of the right of the railway company. This issue was not passed upon by the court, nor are there any findings of fact thereon, but enough is shown to clearly indicate that, in order to enjoy the right claimed, appellants would have to appropriate to its own use exclusively some part of the surface of the ground within the right of way, and to that extent exclude appellee railway company therefrom. This, it

was held by this court in Olive v. Sabine & East Texas Ry. Co., 11 Tex. Civ. App. 208, 33 S. W. 139, in which a writ of error was refused, would be an infringement of the rights of the railway company. In view of the great length of this opinion, we refrain from any further discussion of this question beyond a reference to the case referred to, which we think is decisive of the question. In rendering the judgment the title of appellant, the Gladys City Company, will be recognized to the land, subject to the exclusive use and possession of the railway company, but the right of appellants to enter upon the right of way for the purpose of boring for oil will be refused. The evidence was fully developed upon all the issues, and there is no necessity for remanding the cause. Our conclusion is that the judgment should be rendered by this court: First. That the Texas & New Orleans Railway Company have a right of way across the Veatch survey 100 feet in width, except that part thereof through the Gladys City tract, as to which it has a right of way 200 feet in width. Second. That the Gladys City Oil, Gas & Manufacturing Company has the fee-simple title to this land subject to the easement, as aforesaid, of the Texas & New Orleans Railway Company, so long as the same may be used by it as and for railway purposes. Third. That the Texas & New Orleans Railway Company has no right to the oil or other minerals beneath the surface of said strip comprising its right of way, as aforesaid, nor to sink wells and extract the same, but that such oil is the property of the Gladys City Oil, Gas & Manufacturing Company and of its lessee, the J. M. Guffey Petroleum Company. Fourth. That the said Gladys City Oil, Gas & Manufacturing Company and the said J. M. Guffey Petroleum Company have no right to go upon said right of way and occupy the same for the purpose of sinking wells and extracting the oil. Fifth. That the said appellants recover of the appellees the value as found by the trial court of the oil extracted by the Right of Way Oil Company through the well bored by it on the right of way aforesaid. Sixth. That the Gulf Pipe Line Company have judgment over against the Right of Way Oil Company for whatever amount it may be required to pay under judgment against it.

Let the judgment be so entered.

Reversed and rendered.

### On Motion for Rehearing.

It is proper that brief reference be made to two contentions presented by appellee on motion for rehearing.

[12] The judgment rendered by this court is in favor of the Gladys City Company and the Guffey Petroleum Company. If it was error to render judgment for the Guffey Company, it is not one that operates to the prejudice of appellee, but only to the prejudice of its coplaintiff, the Gladys City Company.

Whatever rights were not conferred upon the Guffey Company by the terms of the lease remain in the Gladys City Company. The judgment is in favor of both of them jointly, and it is not material to appellee how the matter is settled between them.

[13] Appellee further contends that the judgment is erroneous, in that it awards to appellants the value of the oil delivered to the Gulf Pipe Line Company instead of such value, less the cost of extraction. We quite readily agree with appellee that appellees in boring the well and extracting the oil acted under the belief, in good faith and upon reasonable grounds therefor, that they had a right to do so, and that the oil belonged to the Texas & New Orleans R. R. Company. In such case, under proper allegations and proof, it would have been proper to have deducted from the value of the oil in the tanks of the Gulf Pipe Line Company the reasonable value of extracting the same. Bender v. Brooks, 127 S. W. 170.

[14] But there are neither pleadings nor evidence presenting this issue. The plaintiffs sued for the value of this oil, alleged to be 80 cents per barrel. Neither by plea nor exceptions was this measure of damages controverted or put in issue. There are neither allegations nor proof as to the value of extracting the oil. The court found the quantity of oil and its value, to wit, 80 cents per barrel. No finding as to the cost of extraction was requested, nor, indeed, could such finding have been made upon the evidence. The court does find the cost of boring the well, but this alone was not sufficient either for the trial court or this court to determine the reasonable cost of extraction, so as to determine the measure of appellants' recovery under the rule contended for by appellees. No reference is made in the briefs of appellees, nor in the oral argument, to the question now here presented for the first time in the motion for a rehearing. In the circumstances we do not think that our judgment is erroneous in the matter complained of, as the case is presented by the record.

The motion for rehearing is overruled.

Overruled.